**IN THE COURT OF APPEALS OF IOWA**

No. 13-0908
Filed June 25, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LUCAS DAVID REEVES,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Joseph M.

Moothart, District Associate Judge.


        A defendant appeals his conviction for domestic abuse assault causing

bodily injury.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Robert Ranschau, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Jeremy Westendorf,

Assistant County Attorney, for appellee.


        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Defendant Lucas Reeves appeals his conviction for domestic abuse assault causing bodily injury, in violation of Iowa Code section 708.2A(2)(b) (2011). He argues the district court abused its discretion in denying his motion for new trial. He also contends his trial counsel provided constitutionally ineffective assistance by failing to object to certain statements made by the prosecutor during rebuttal argument. We affirm Reeves' conviction.

I.

On February 15, 2013, a jury found Reeves guilty of the above-stated offense. Reeves' trial counsel filed a motion for new trial, contending the verdict was against the weight of the evidence. The district court denied the motion on the record, which Reeves contends was an abuse of discretion. The gist of Reeves' argument is the State's case is wholly circumstantial: no witness saw the assault occur; and the victim, Reeves' wife, denied the assault.

"A court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Contrary to the evidence means contrary to the weight of the evidence. *See State v. Reeves*, 670 N.W.2d 199, 201 (Iowa 2003) (citation omitted). "The district court has broad discretion in ruling on a motion for new trial." *Id.* at 202. Our review is limited to the question of whether the district court abused its discretion in denying the motion and not a decision on the merits of whether the verdict is against the weight of the evidence. *See id.* at 203. To establish an abuse of discretion, the defendant must show the district court exercised its

discretion on grounds for reasons clearly untenable or to an extent clearly unreasonable. *See id.* at 202. We recognize that trial courts should exercise the discretion to grant a new trial "carefully and sparingly." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

We conclude the district court did not abuse its discretion in denying the motion. The district court found that the weight of the evidence—although circumstantial—supported the verdict. The victim was not credible. Her explanation of events to the police and then testimony was not internally consistent and was not consistent with the timeline and physical evidence. On the other hand, the contrary evidence in support of the verdict was credible and compelling.

The contrary evidence showed the Reeveses married on June 21, 2012. After the wedding they returned to their apartment with another couple and ordered pizza. Sometime that same day, several neighbors heard a very loud argument coming from inside the apartment. One of those neighbors, Roberto Corona, saw two people, not the Reeveses, exit the apartment. Corona continued to hear loud arguments emanating from the Reeveses' apartment and called 911.

Around the same time, Michael Carpenter, an employee of Pizza Hut, arrived at the Reeveses' apartment to deliver pizza to the Reeveses. Carpenter heard one male and one female arguing with each other. As Carpenter approached the door to the apartment, he testified, he heard sounds described as a fist hitting someone's face two to three times. After the last hit, he heard a

female voice "gasp in horror." Approximately ten seconds later, a male and female exited the apartment. The female looked "horrified," and the male looked horrified and confused. Neither of the individuals exiting the apartment appeared injured. The female told Carpenter, "Yeah, you should probably go and call the police." Carpenter left, he contacted his supervisor, and the police were called.

Officers Bose and Roberts arrived at the Reeveses' apartment and found the apartment door closed and locked. Officer Roberts knocked and announced, but no one answered the door. After repeated attempts to have someone answer the door were met without any response, Officer Roberts kicked down the door to gain entry. Inside the apartment, the officers observed food containers on the floor and food splattered on the wall and kitchen floor consistent with an argument or fight. The defendant came out of the bathroom, told the officers nothing happened, and repeatedly asked why the officers were there. Officer Bose observed Reeves had blood on his ankle and what appeared to be blood smeared on his shirt.

Officer Roberts interviewed the victim, who had a bloody, fat lip. The strap from her dress was torn off. She told Officer Roberts that she and the defendant had been wrestling. Upon hearing this, the defendant changed his story and agreed with the victim. The victim then told Officer Roberts she tripped on her dress and hit her face on a table. Her injuries were not consistent with her account. When Officer Roberts told the victim the police had to photograph her injuries, she ran away and locked herself in the bathroom and did not allow pictures.

More credible evidence supports the State's case than Reeves' case. Multiple disinterested witnesses heard arguments emanating from the apartment. Those witnesses independently called 911. Upon arriving shortly after receiving dispatch, the officers found physical evidence, including thrown food, torn clothing, blood stains, and physical injuries consistent with an assault. Reeves' and the victim's explanation of events were internally inconsistent and not consistent with the physical evidence. At trial, the victim contradicted herself about the assault; at first denying there was another couple in the apartment when the assault started and then later admitting to the same. We cannot say the district court abused its discretion in denying the defendant's motion for new trial.

## II.

Reeves next contends that his counsel rendered constitutionally deficient performance in failing to object to several remarks made during rebuttal argument that, he contends, constitute prosecutorial misconduct.

> In analyzing the defendant's ineffective-assistance-of-counsel claim, our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [defendant] and whether the record shows [defendant] was prejudiced, i.e., denied a fair trial.
>
> If the record is insufficient to make this determination, we must preserve the defendant's ineffective-assistance claim for a fuller development of the pertinent facts. If, however, the record shows that either element is lacking as a matter of law, we will affirm [defendant's] conviction without preserving his due process claim for a later postconviction relief action.

*State v. Graves*, 668 N.W.2d 860, 869-70 (Iowa 2003). The record is sufficient to pass on Reeves' claim.

"To show a denial of due process, the defendant must establish the prosecutor's misconduct deprived the defendant of a fair trial." *Id.* at 876. Relevant factors include: "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.* at 877. "The most important factor under the test for prejudice is the strength of the State's case." *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006); *see id.* at 560 (finding alleged misconduct by prosecutor was not prejudicial where "the State's evidence was extremely strong"). We turn our attention to the particular statements challenged.

Reeves contends his counsel should have objected when the prosecutor referred to Reeves' arguments as "garbage" and "offensive." Reeves mischaracterizes the nature of the prosecutor's statement. The prosecutor was not commenting on Reeves' theory of the case. Instead, the prosecutor was responding to defense counsel's statement to the jury that the State had wasted the jury's time in bringing the case:

> Some of you may be thinking, 'Why are we here'? Well, let's take a look. We can't blame the police. . . . We can't blame Mr. Reeves. . . . The State is the one who chooses to pursue these types of offenses, and they're the ones that bring us here today.

When the prosecutor's statement is viewed in context, we cannot conclude the prosecutor engaged in misconduct or this statement resulted in an unfair trial.

The prosecutor's comments were not pervasive, they were not related to a central issue in the case, and the comments were invited by defense counsel's argument that the State was wasting the jury's time. "While more professional language could, and should, have been used to convey the same message, we should not forget that prosecutors are entitled to some latitude in crafting a closing argument." *See id.* at 557.

Reeves next contends his counsel should have objected when the prosecutor commented on the victim's contradictory testimony regarding whether there was or was not another man and woman in the apartment at the time the argument started. The victim testified that her testimony changed because she did not understand the State's original questions. In rebuttal, the prosecutor stated:

> What she testified to is not believable. They try to explain away how she didn't understand my question. I don't think I could have been any clearer. I asked it, I don't know, five times in different ways. Everything I did, I was trying to make sure that it was as clear as possible for her, to give her a chance to explain. 'Oh, no.' Or correct herself. "No, this is actually the way it was." Not once did she get that. It was continued, 'No, no. It was just us, just us, just us, just us.'

We conclude the prosecutor's statement does not rise to the level of misconduct. "Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented." *Carey*, 709 N.W.2d at 554 (citation omitted). While it is improper for the prosecutor to call a witness a liar or to state the witness is lying, the prosecutor is also free "to craft an argument that includes reasonable inferences based on the evidence and . . . when a case turns on which of two conflicting stories is true, [to argue that] certain testimony is

not believable." *Graves*, 668 N.W.2d at 876 (alteration in original) (citation omitted).

Reeves finally contends the prosecutor misstated the law regarding the reasonable doubt standard.

> If you are convinced, if you're firmly convinced that the defendant did this, there is no reasonable doubt. That's it. So, as you sit here today, *if you've got a gut feeling, if your gut's telling you he did this*, this is what he did, he hit his wife, he abused his wife, then there's no reasonable doubt.

Reeves has not established the prosecutor engaged in misconduct. The prosecutor's statement that there is no reasonable doubt if the jury was "firmly convinced" of the defendant's guilt is contained in the jury instruction on reasonable doubt. Second, the defendant has not cited any authority standing for the proposition that the prosecutor's statement about a "gut feeling" was improper. When viewed in context it appears the prosecutor connected his statement regarding "gut feeling" to the proper "firmly convinced" language.

Further, the record establishes that the prosecutor's statement did not prejudice Reeves and deprive him of a fair trial. First, the prosecutor's statement was an isolated incident. Second, and more important, the court provided cautionary instructions: (1) instructing the jury to decide Reeves' guilt from the evidence and the jury instructions; (2) stating the correct reasonable doubt standard; and (3) instructing the jury that evidence did not include statements, arguments, or comments by the lawyers. *See State v. Musser*, 721 N.W.2d 734, 756 (Iowa 2006) (finding defendant was not prejudiced where the jury was instructed to decide the defendant's guilt or innocence "from the evidence and

the law in these instructions, and that evidence did not include statements, arguments, and comments by the lawyers" (alteration omitted)). In a very similar case, our court concluded that the prosecutor's statement made during closing argument that the jury should follow its "gut feeling" was not prejudicial where proper instructions were given and the State's case was strong:

> Further, when we consider the record as a whole, the alleged comment could not have misled the jurors into applying a lower standard of proof than beyond a reasonable doubt. The trial court instructed the jury it was to base its verdict only upon the evidence and the instructions given by the court. The instructions identified the correct standard of proof, beyond a reasonable doubt, and accurately defined that standard. We find this was sufficient to dispel any potential confusion which might have been caused by the prosecutor's alleged comment. *See State v. Hardin*, 569 N.W.2d 517, 522 (Iowa Ct. App. 1997). In addition, as with the prosecutor's misstatement of a fact, any alleged misstatement of law was one isolated incident. Finally, as noted earlier, the evidence against Morris was very strong. We conclude any alleged misstatement of law by the prosecutor did not deny Morris a fair trial.

*State v. Morris*, No. 98-1640, 2000 WL 381641, at *9 (Iowa Ct. App. Apr. 12, 2000).

Finally, and this applies with equal force to each of the statements alleged to be improper, there is overwhelming evidence of guilt. While the State's case was circumstantial, there is no distinction between direct evidence and circumstantial evidence. *See State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008). As discussed in the preceding division, law enforcement quickly responded to two separate calls reporting the assault. The victim and Reeves were found alone in their apartment with physical evidence and injuries that could only be explained by an assault on the victim. "The most important factor under

the test for prejudice is the strength of the State's case." *Carey*, 709 N.W.2d at 559. There was no prejudice here.

III.

For the foregoing reasons, Reeves' conviction is affirmed.

**AFFIRMED.**