**STATE of Iowa, Appellant,**

v.

**Valerie Lynn REEVES, Appellee.**

No. 02–0199.

Supreme Court of Iowa.

Oct. 8, 2003.

Thomas J. Miller, Attorney General, Sheryl Soich and Kevin Cmelik, Assistant Attorneys General, and Michael E. Wolf, County Attorney, for appellant.

Jon M. Kinnamon, Cedar Rapids, for appellee.

LAVORATO, Chief Justice.

Following a remand from this court, the district court reversed Valerie Lynn Reeves' conviction for murder in the second degree and granted her a new trial. The State appealed and we transferred the case to the court of appeals, which reversed. We granted Reeves' application for further review. On our review, we vacate the court of appeals decision, affirm the judgment of the district court, and remand the case for further proceedings consistent with this opinion.

## I. Procedural History.

A jury found Reeves guilty of second-degree murder. She appealed, contending that the district court applied the wrong standard when that court denied her motion for new trial. We transferred the case to the court of appeals. That court reversed and remanded the case to the

district court with directions to apply the weight-of-the-evidence standard set out in *State v. Ellis,* 578 N.W.2d 655 (Iowa 1998).

On remand, the district court concluded that the weight of the credible evidence did not support the second-degree murder conviction and granted Reeves a new trial. The State appealed and we again transferred the case to the court of appeals. The court of appeals affirmed and the State filed an application for further review, which we granted. We concluded that on the issue of malice aforethought the district court erred by requiring proof of an opportunity to deliberate as a part of the inference arising from the use of a deadly weapon in second-degree murder. *State v. Reeves,* 636 N.W.2d 22, 26 (Iowa 2001) (*Reeves I*). We vacated the court of appeals decision and remanded the case for a new hearing on Reeves' motion for new trial. *Id.*

On the second remand, the district court again concluded that the weight of the evidence did not support the jury's verdict and granted Reeves a new trial. However, this time the court's ruling was based on an analysis different from its analysis in the first remand.

The State appealed and we again transferred the case to the court of appeals. That court in a 2 to 1 decision concluded the district court abused its discretion in granting Reeves a new trial. The court reversed and remanded the case with directions to reinstate the jury verdict of second-degree murder. Reeves filed an application for further review, challenging the court of appeals decision. We granted the application and the case is now before us.

## II. Applicable Law.

To aid our analysis, we think it would be helpful to review the principles we laid out in *Ellis.* Iowa Rule of Criminal Procedure 2.24(2)(*b*) (6) permits the trial court to grant a new trial "[w]hen the verdict is contrary to law or evidence." In *Ellis* we held that "contrary to . . . evidence" in this rule means "contrary to the weight of the evidence." *Ellis,* 578 N.W.2d at 659. In *Ellis,* we took our cue from *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In *Tibbs,* the Court held that double jeopardy does not bar retrial after a state appellate court sets aside a conviction because the verdict was against the weight of the evidence. *Tibbs,* 457 U.S. at 32, 102 S.Ct. at 2213, 72 L.Ed.2d at 655.

In *Tibbs,* the court noted the general rule that a defendant who successfully appeals a conviction was subject to retrial. *Id.* at 39–40, 102 S.Ct. at 2217, 72 L.Ed.2d at 660. The Court also noted this narrow exception: Double jeopardy precludes retrial of a defendant who successfully appeals a conviction "once the reviewing court has found the evidence legally insufficient" to support a conviction. *Id.* at 40–41, 102 S.Ct. at 2217, 72 L.Ed.2d at 660 (citation omitted). This standard, the Court said, means "that the government's case was so lacking that it should not have been *submitted* to the jury." *Id.* at 41, 102 S.Ct. at 2217, 72 L.Ed.2d at 660 (citation omitted). Additionally, the Court noted that "[a] conviction will survive review . . . whenever 'the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt.'" *Id.* (citation omitted). In *Ellis,* we concluded "[t]hese meanings of 'insufficiency of the evidence' accord with our own view of the standard." 578 N.W.2d at 658.

In *Ellis,* we recognized that *Tibbs* makes clear "there is a serious double jeopardy consequence that demands a distinction between the [sufficiency-of-the-evidence standard and the weight-of-the-evi-

dence standard].... " *Id.* at 659. For that reason, we held that "contrary to ... evidence" in rule [2.24(2)(*b*)(6)] means "contrary to the weight of the evidence" as defined in *Tibbs*. *Id.*

*Tibbs* contrasted an evidentiary review based on the weight and the sufficiency of the evidence:

> [A] conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the appellate court into questions of credibility. The "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."

*Tibbs*, 457 U.S. at 37–38, 102 S.Ct. at 2216, 72 L.Ed.2d at 658 (citations omitted).

In *Ellis*, we noted that federal courts apply the *Tibbs* weight-of-the-evidence standard on motions for new trial under Federal Rule of Criminal Procedure 33, which allows a new trial if "the interests of justice so require." *Ellis*, 578 N.W.2d at 658. We quoted with approval this passage from one commentator as to when and why trial courts must use a sufficiency-of-the-evidence standard or a weight-of-the-evidence standard:

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
>
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
>
> ... The motion [for new trial] is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

*Id.* at 658–59 (quoting 3 Charles A. Wright, *Federal Practice and Procedure* § 553, at 245–48 (2d ed. 1982)).

 As one court explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain a verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000).

### III. Scope of Review.

 The district court has broad discretion in ruling on a motion for new trial. *State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997); *see also* Iowa R.App. P. 6.14(6)(*c*) ("In ruling upon motions for new trial the district court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties."). We reverse where the district court has abused that discretion. To establish such abuse, the State must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* We are slower to interfere with

the grant of a new trial than with its denial. Iowa R.App. P. 6.14(6)(*d*).

On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence. *Widmer,* 744 A.2d at 753; *see also United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988) (appellate court neither sits to judge credibility of witnesses nor to reweigh the evidence; rather appellate court is limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence does or does not "preponderate heavily against the verdict" is a clear and manifest abuse of discretion).

The standard we apply in determining whether the district court has abused its discretion in granting a new trial on a weight-of-the-evidence claim was aptly stated by one court in this passage:

The discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. "We do not mean ... that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury ... erred, and found against the fair prepon-

derance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

*State v. Oasheim,* 353 N.W.2d 291, 294 (N.D.1984) (citations omitted); *accord State v. Warren,* 624 A.2d 841, 843 (R.I. 1993).

## IV. Analysis.

In its January 17, 2002 ruling on the second remand, the district court adopted its findings of fact from its March 15, 2000 ruling on the first remand as well as our findings of fact in *Reeves I.* To fully understand the district court's reasoning on the second remand, which is the subject of this appeal, we set out our findings in *Reeves I,* as well as the district court's findings on both remands.

In *Reeves I,* we found:

The following facts are based largely on defendant's testimony. On September 28, 1997, Reeves left on a hitchhiking trip from her home in Normal, Illinois, to Sabula, Iowa. Along with clothing, Reeves packed her husband's ten millimeter handgun. After her ride dropped her off in Sabula, she went to a tavern to drink and inquire about a place to stay for the night. The bartender called a local bed and breakfast, but there were no rooms available. One of the bar customers, Eugene Malone, offered to let her stay at the house he shared with his mother. Malone and Reeves had never met before, but the female bartender assured Reeves it would be all right, as the bartender knew Malone. Reeves left the bar with Malone. Malone's autopsy indicated his blood alcohol content was nearly twice the legal limit. Reeves testified she had drunk enough she was blacking out at times and she was "very loaded."

Malone took Reeves to his home. Reeves testified that once there, Malone made a sexual advance toward her, which she rejected. Malone's mother later said she heard a female voice saying "no, no, no." Reeves testified Malone became angry because Reeves had disturbed his mother, and he suggested they leave. Reeves believed Malone was taking her to stay somewhere else.

According to Reeves, Malone drove them in his truck into the country. She testified he stopped the truck and "attacked" her by leaning onto her and pinching her breasts very hard. Reeves testified she panicked, began screaming, and fired the gun although she does not remember retrieving it from her bag. Reeves ran from the truck because she was frightened Malone would follow her. For thirty hours, she wandered through road ditches and fields before entering a nearby town where she was spotted by a sheriff's deputy and arrested. Reeves said she was aware of the search being conducted by law enforcement.

Authorities later found a pile of the defendant's clothing in a road ditch. Reeves testified she changed out of her clothes because they had blood on them and because, when she was frightened by the event, she had soiled her pants. The gun was found in a stream along with her bag approximately two miles from where the truck was found. The gun had three safeties, designed to prevent accidental discharge by dropping, but on this model all three safeties were disengaged merely by pulling the trigger.

Investigation of the crime scene revealed six shots had been fired, four of which struck Malone. At trial, Dr. Peter Stephens, a forensic pathologist, testified for the defendant. He testified that powder burns and marks on Malone's skin indicated the first shot struck him below the arm and went into his stomach. The position of this wound was consistent with Malone leaning toward Reeves. The second shot struck the top of Malone's right shoulder. The third grazed his right cheek and the tip of his nose. The fourth entered the back of Malone's skull. As the shots were fired, the muzzle of the gun became increasingly elevated, which frequently occurs with inexperienced shooters and is a natural consequence of the gun's recoil, according to this witness. He also testified that the sequence of shots was consistent with a struggle, and the progressive elevation of shots indicated Reeves had fired the gun in a continuous operation without having to reacquire the target each time the gun was fired.

*Reeves*, 636 N.W.2d at 23–24.

In its March 15, 2000 ruling on the first remand, the district court made these findings after stating the positions of both sides:

[I]t is the Court's opinion that the circumstantial evidence supports the testimony of the defendant indicating that an altercation had occurred between the defendant and the victim prior to the defendant grabbing the gun and shooting the victim. There is no credible evidence which shows that the defendant had an opportunity to deliberate prior to discharging the weapon at the victim. The victim was first shot under the armpit indicating that he was reaching for the defendant, the second shot struck the victim's shoulder, the third shot struck the victim's face, and the fourth shot struck the victim in the back of the head indicating that the gun had continued to rise as the defendant shot rather than the defendant having to reacquire the target each time the gun discharged.

The fact that this incident took place on a dark country road in Clinton County facing the opposite direction from where the defendant wished to be taken, that being Clinton, Iowa; the fact that there was no robbery or attempt to take the vehicle of the victim; the fact that these parties did not know each other prior to the defendant coming into the bar where she met the victim; the fact that the defendant did not attempt to hitchhike or immediately flee the scene to return to Illinois but wandered aimlessly around the countryside where she was then picked up in broad daylight by a sheriff's deputy as defendant walked down the county road; and the fact that the defendant appeared to have defecated in her pants either during or shortly after the incident all supports her testimony given at the trial. None of this evidence was negated by the State through the use of circumstantial evidence or testimony of the witnesses. Therefore, even with the cautionary approach that the Court uses in these type of cases, the Court is of the opinion that the weight of the credible evidence does not support the verdict by the jury for second-degree murder.

On the second remand, the district court, in its January 17, 2002 ruling, made these findings:

[I]n viewing the weight of the credible evidence, no motive is apparent as to why Valerie Reeves would have discharged the weapon at the decedent at the time of the incident unless provocation existed.... [I]t is the opinion of this Court that the weight of the evidence does not support the verdict of murder in the second degree in that malice aforethought was not proven beyond a reasonable doubt. The Court in its prior ruling of March 15, 2000 did not address this issue due to the fact that it found that the State did not prove that

the defendant had time to deliberate prior to the act of firing the weapon.

This Court is mindful of the requirement that it exercise its discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict or conviction is contrary to the weight of the evidence. The Court is also aware that unreasonable failure to sustain the verdict of a jury, who are the principal triers of the facts, would enable a trial court to disregard at will the jury's verdict. However, the Court is also required by law under the weight-of-the-evidence standard to determine whether or not reasonable people could have come to the conclusion that the State has proven beyond a reasonable doubt the element of malice aforethought based on the evidence produced at the time of trial.

In reviewing the evidence, it is clear to this Court that the weight of the evidence supports the position of the defendant that provocation existed at the time of the discharge of the weapon....

In this case, the decedent weighed between 220 to 250 pounds. Both parties appeared to have been intoxicated when they left the establishment in Sabula, Iowa to go to the home of the decedent. The parties did not have a prior relationship before their initial contact the night before the incident. It would appear from the evidence based on the testimony of the decedent's mother and that of the defendant that the decedent made a pass at the defendant at the home of his mother. The decedent's mother heard a female voice say "No, no, no," which indicates that she was resisting the advances of the decedent. Malone then drove his truck to an isolated area in Clinton County in the early morning hours, pointed in the op-

posite direction of any populated area nearby. Ms. Reeves then indicates in her testimony that Malone reached across the vehicle and attacked her by grabbing her breasts and pinching them very hard. She then, according to her testimony, reacted in a panic, started screaming, does not recall how she obtained the gun from her back pack and then heard the gun go off several times. The defendant had no history of violence, although she had been victimized herself by an incident of violent sexual abuse in New Orleans.

Once the weapon had been discharged, the defendant fled from the area of the truck, having defecated in her pants because of the situation. The testimony of Reeves was supported by the circumstantial evidence and was corroborated by Dr. Peter Stephens, a forensic pathologist. Dr. Stephens testified that the first shot struck the decedent below the arm, which indicates that he was leaning towards Reeves at the time of the discharge. He also testified that the progress of the shots indicates that Reeves did not reacquire the target and also that this was consistent with a struggle. Reeves did not attempt to flee in decedent's vehicle, rob him or otherwise do anything inconsistent with her testimony that she left the vehicle in a panic after the shots were discharged. She then proceeded to walk around aimlessly in the area for 30 hours after placing her clothes neatly folded in a ditch and throwing her bag and gun in a creek a few miles from the site of the incident. She was then picked up walking in broad daylight down a country road by a Clinton County sheriff's deputy. She then related to the deputy what had occurred, and her testimony at trial was substantially in accord with this statement.

The Court has considered the State's arguments . . . in response to the motion filed by the defense. Although the Court considers those arguments as a possibility of what occurred during the incident, the Court, even in viewing the evidence in the light most favorable to the State, finds that the weight of the evidence does not support the position of the State.

The Court has by its ruling indicated that the weight of the evidence supports the fact that provocation existed prior to the discharge of the weapon by Valerie Reeves. Malice aforethought requires a fixed purpose or design to do some physical harm to another which must exist prior to the act being committed and continued during the act. The fact that the Court has ruled that the weight of the evidence supports the issue of provocation thereby overcoming the presumption [of malice arising from] the use of a dangerous weapon puts the burden on the State to show by credible evidence malice aforethought. The weight of the evidence supports the position of the defendant that the discharge of a weapon was panicky and provoked due to the rapid and indiscriminate firing of the weapon as indicated by the Court in its previous findings of fact.

Based on the above it is the ruling of this Court that the weight of the evidence does not support the verdict of the jury finding that malice aforethought was proven beyond a reasonable doubt. . . .

(Citations omitted.)

All of these findings of fact have support in the record. As noted in the district court's latest ruling, the court concluded that the weight of the evidence did not support a finding of malice aforethought.

■ Iowa Code section 707.1 (1997) defines murder: "A person who kills another person with malice aforethought either express or implied commits murder." "A

person commits murder in the second degree when the person commits murder which is not murder in the first degree." Iowa Code § 707.3. Malice aforethought is therefore an essential element of second-degree murder and is an element that separates second-degree murder from other lesser included offenses. *State v. Inger*, 292 N.W.2d 119, 121–22 (Iowa 1980).

■ Malice aforethought is defined as *a fixed purpose or design to do some physical harm to another existing prior to the act complained of;* it need not be shown to have existed for any length of time before, ...; it is sufficient if such purpose was formed and continued to exist at the time of the injury....

*State v. Hofer*, 238 Iowa 820, 833, 28 N.W.2d 475, 482 (1947).

■ The law allows a presumption of malice aforethought from the use of a deadly weapon in the absence of evidence to the contrary. *State v. Woodmansee*, 212 Iowa 596, 620, 233 N.W. 725, 736 (1930). Thus, the presumption is only permissive. *State v. Elam*, 328 N.W.2d 314, 318 (Iowa 1982). And the presumption may be rebutted by evidence showing the killing was accidental, under provocation, or because of mental incapacity. *Woodmansee*, 212 Iowa at 619, 233 N.W. at 736; *see also State v. McNamara*, 252 Iowa 19, 25, 104 N.W.2d 568, 572 (1960) (holding that presumption of malice aforethought arises from the use of a deadly weapon "unless there is an explanation to the contrary showing a legal excuse such as self-defense"). Although motive for the killing is not a necessary element of second-degree murder, absence of such motive may be considered on the question whether the defendant acted with malice aforethought. *McNamara*, 252 Iowa at 25, 104 N.W.2d at 572.

The district court also submitted voluntary manslaughter to the jury. Iowa Code section 707.4 defines this offense:

A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

Iowa Code § 707.4.

■ With respect to the deadly weapon issue, we think the district court cited evidence that preponderated heavily in support of its finding of provocation sufficient to overcome the presumption of malice aforethought. The victim's size, his drunken stupor, his intentions as indicated by his unwanted pass at his mother's home, his subsequent sexual assault, the circumstances under which and place where the sexual assault occurred, Reeves' past history of being violently raped, no history of violence on the part of Reeves, and the very short interval of time between the sexual assault and the shooting all support this finding. Granted most of this evidence came from Reeves' testimony. Obviously, the district court believed her. But credibility of the witnesses is key in a weight-of-the-evidence determination. Moreover, there was no contrary evidence in the record. This is not one of those cases where the jury had to believe one of two people in arriving at a verdict.

In addition, the district court cited other evidence that supported Reeves' testimony. For example, the victim's mother heard a female voice saying "No, no, no," bolstering Reeves' testimony that Malone made a pass at her which she resisted. The truck was found in an isolated area

pointed in the opposite direction of any populated area nearby which bolstered Reeves' testimony of the sexual assault. The forensic pathologist testified that the first shot struck Malone below the arm, indicating he was leaning towards Reeves at the time of the shot and that the progress of the shots was consistent with a struggle. These facts further support Reeves' testimony of the sexual assault. Following the shooting, Reeves did nothing that was inconsistent with her testimony: She did not attempt to flee in the truck; she did not rob Malone; she wondered aimlessly for 30 hours after neatly folding her clothes in a ditch and throwing her bag and gun in a creek a few miles from the scene; she was picked up walking in broad daylight down a country road; her testimony was substantially in accord with the statement she gave authorities as to what happened.

In short, all of these facts and circumstances convince us that the district court had adequate reason to conclude that the weight of the evidence established the following: (1) Reeves had been provoked when she fired the gun at Malone, (2) Malone's conduct coupled with Reeves' prior history as a victim of sexual assault qualified as "conduct that would cause a reasonable person to have a sudden, violent and irresistible passion," and (3) from the time Malone physically attacked Reeves in the truck, she did not have time to reflect and bring her passion under control.

(An argument can be made that these findings preponderate heavily in favor of finding that Reeves acted in self-defense, negating the presumption of malice. The district court submitted this defense to the jury. Because the district court did not focus on self-defense in its latest remand ruling, we may not consider this issue because to do so would entail, on our part, a re-weighing of the evidence.)

After finding that the weight of the evidence preponderated heavily against a presumption of malice, the district court concluded the weight of the evidence preponderated heavily against a finding of malice aforethought. In support of this conclusion, the district court said: "The weight of the evidence supports the position of the defendant that the discharge of a weapon was panicky and provoked due to the rapid and the indiscriminate firing of the weapon as indicated by the Court in its previous findings of fact." We take all of this to mean that the manner of indiscriminate and rapid firing, the sporadic nature of the rapid firing, the elevation of the weapon, and the lack of target re-acquisition showed a spontaneous response by Reeves to Malone's sexual assault on her. Rather than showing a fixed design to do harm prior to the shooting, this evidence supports the district court's finding that the shooting was entirely unformed and unconsidered before the provocation. Buttressing this finding is a lack of motive on the part of Reeves and any evidence that the two had a prior relationship. In short, the shooting was a product of panic and of the moment as evidenced by the fact that Reeves defecated in her pants.

Again, in making its findings, the district court, exercising its authority to weigh the evidence and determine credibility, believed Reeves as well as the forensic pathologist who testified in her favor. There was no medical expert testimony in opposition to the testimony of the forensic pathologist. In fact, the medical examiner who performed the autopsy on Malone testified he would rely on the forensic pathologist regarding his conclusions and opinions as to how the injuries Malone suffered were sustained.

We recognize, as the State contends, that the evidence supports the jury ver-

dict. But as we mentioned, under the weight-of-the-evidence standard, a motion for new trial concedes this. The dissent in the most recent court of appeals decision insightfully explained away this apparent inconsistency:

> The *Ellis* standard is an especially difficult standard, as it provides that evidence can somehow both "preponderate heavily" against a guilty verdict and yet still be adequate to convict defendant, in a second trial, beyond a reasonable doubt. The only way to reconcile two apparently contradictory evaluations of the same evidence is to rely upon credibility assessments and evidentiary inferences, which the trial court is in the best position to make.

For all these reasons, we conclude the district court properly applied the weight-of-the-evidence standard in considering the motion for new trial on the second remand. Here the court carefully weighed the evidence, determined credibility, and gave sufficient reasons for its decision that the verdict was contrary to the weight of the evidence. The court did exactly what it was required to do under a weight-of-the-evidence standard. We conclude the court acted well within its discretion in granting Reeves a new trial. We therefore vacate the court of appeals decision, affirm the judgment of the district court, and remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except STREIT, J., who takes no part.