# IN THE COURT OF APPEALS OF IOWA

No. 15-1164
Filed September 14, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KYLE JOHN ROBERTS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Kyle Roberts appeals from a judgment and sentence for stalking in violation of a protective order. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Kyle Roberts appeals from a judgment and sentence for stalking. He claims the district court abused its discretion when it overruled his motion for judgment of acquittal, the evidence was insufficient to support the conviction, and the court abused its discretion when it refused to suspend his prison sentence and place him on probation. We affirm.

Roberts lived across the street from H.B. In 2010, Roberts initiated a Facebook request to be "friends" with H.B. She had never met him. Upon learning he was a neighbor living across the street, she declined his request. She was eighteen years old and a senior in high school at the time and was living with her parents. Roberts was older and lived alone. Over the next two years there were several contacts or incidents that eventually caused H.B. to obtain a no-contact order in November 2012.

In November 2014, Roberts was charged by trial information with stalking in violation of a protective order. *See* Iowa Code § 908.11(3)(b)(1) (2013). A jury found him guilty of stalking H.B. Roberts appeals arguing his numerous contacts or incidents involving H.B. did not individually constitute harassment and do not combine to constitute harassment, and thus the evidence was insufficient to warrant submission to the jury. He also argues the court abused its discretion by refusing to suspend his prison sentence and give him the opportunity on probation to seek the mental-health counseling he needs. His pro se final brief and pro se reply brief are more accurately characterized as rants against the judicial system and arguments for how the facts were misunderstood by the victim, prosecutor, court, and jury. Nonetheless, we will generously consider his

briefs as an appeal from the district court's denial of his motion for a new trial. The district court ruled it did "not find that the verdict was contrary to the law or the evidence."

"In evaluating [a defendant's] claim that the district court should have granted [a] motion for judgment of acquittal, we apply a sufficiency-of-the-evidence test and view the evidence in the light most favorable to the State." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). We review sufficiency of the evidence to determine if there was substantial evidence to support the jury's verdict. *State v. Terry*, 544 N.W.2d 449, 451 (Iowa 1996). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). We review sentencing decisions for abuse of discretion. *See State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015).

The jury was instructed these were the elements of the charge against Roberts:

> 1. Between June 14, 2012, and August 24, 2014, the defendant purposefully engaged in a course of conduct directed at [H.B.] that would cause a reasonable person to fear bodily injury to, or the death of [H.B.] or a member of [H.B.]'s family.
> 2. The defendant knew or should have known that [H.B.] would be placed in reasonable fear of bodily injury or death to her or a member of her immediate family.
> 3. The defendant's course of conduct caused [H.B.] to fear bodily injury or death to her or a member of her immediate family.

*See* Iowa Code § 708.11. They were also instructed that the phrase "a course of conduct" used in the instruction required proof of two or more occasions. *See id.*

On our review of the record, we find there were numerous contacts or incidents over the course of the years. In combination, they could arguably cumulatively establish unlawful contact. Rather than address the minutia of those numerous contacts, we will focus on the events recounted by the district court when it considered Roberts's motion for judgment of acquittal:

> At this time the court has to take the evidence in the light most favorable to the State, and the court does find that the—the evidence does present a jury question on all of the elements of the offense.
>
> In particular, regarding [H.B.], the court finds that the stipulation of the parties shows that there was a valid court order prohibiting contact between the defendant and [H.B.] beginning in November of 2012. That since that time and while that was in effect there has been a course of conduct or may be found a course of conduct regarding at least two acts in particular. There is the act in which the truck was parked and the lights flashed. There is the appearing at the—at Beck's and also the actions of the defendant mimicking knocking on the door. He admitted to those and admitted that those may have an effect on [H.B.'s] family.
>
> The court finds that those acts were directed directly at [H.B.] or the evidence could find that, and therefore [for] count I there is sufficient evidence.

The first incident referenced by the district court occurred at about 8:30 p.m. on April 14, 2013. Roberts positioned his pickup truck in his front yard so that it was facing directly at the house where H.B. and her family lived. Roberts had his truck running, headlights on high beam, and hazard flashers on. Part of that time, Roberts was standing in his yard and for ten to fifteen minutes was "laying on the horn." H.B. and her family were home and frightened, believing Roberts might try to drive his truck into the front of their home. The family huddled in a back bedroom out of fear. A neighbor had seen what Roberts was doing and went out to talk with him. That neighbor testified that during the conversation Roberts said "if he thought whatever he did was harassment before,

he would show them what harassment was." A sheriff's deputy responded to the scene after Roberts had gone inside his home. The deputy reminded Roberts of what was prohibited by the existing no-contact order.

The second incident occurred at Beck's, an establishment that had line dancing on Thursday evenings. H.B. routinely participated in the line dancing, dressing in western attire. One such evening in July 2014, Roberts appeared at Beck's. When H.B. saw him, she left Beck's. On another line-dancing night in August 2014, she saw Roberts sitting at a table by himself, where he had a direct line of sight to watch H.B. She saw him, became frightened, and went to the restroom. She called her dad and then the police. When a police officer arrived, he saw Roberts sitting alone, facing the women's restroom in which H.B. was hiding. There was no evidence Roberts was at Beck's to dance or to watch anyone other than H.B.

The third incident referenced above by the district court—mimicking knocking on the door—occurred in 2014 but had its origins in an incident that occurred on June 14, 2012, after H.B. had returned home from school and was the only person home. She heard someone pounding hard on the front door, followed by someone jiggling the front door handle as if the person were trying to open it. The front door was locked, but H.B. called her grandmother and her dad and got a baseball bat for safety before the person at the door finally left. H.B. was able to identify the person as Roberts. That incident frightened H.B. and caused her to fear for her safety. So, in 2014, when H.B. saw Roberts standing in the front yard pantomiming knocking on a door and jiggling a handle, H.B. believed he was replaying the 2012 incident, intending to cause her fear.

H.B. testified she slept with a baseball bat and started carrying a canister of mace with her because of her fear of Roberts. Her family also put darkened and thick and heavy shades on the windows and doors of their home to try to keep Roberts from seeing into their house. H.B. had two sets of shades on the windows of her bedroom. During the truck incident, she took a baseball bat to the back room with the rest of her family, as they feared Roberts would drive his truck through the front of their house and injure or kill H.B. or other family members. H.B. testified she was afraid during other encounters with Roberts.

Roberts posted on Facebook that he was "scaring [H.B.] so bad she slept with a bat." The evidence showed his attempt to enter H.B.'s house in 2012 had scared her. That is apparently why he chose to pantomime that event. The evidence clearly shows he believed he was scaring H.B. and intended to scare her.

Based on the entire record, we find there was sufficient evidence upon which a jury could find Roberts guilty beyond a reasonable doubt, that he engaged in a course of conduct directed at H.B. that would cause her to fear bodily injury or death to her or a member of her family, that he knew or should have known she would be placed in reasonable fear, and that Roberts caused that fear. We find substantial evidence supports the verdict reached by the jury. We also conclude the district court did not abuse its discretion when it overruled Roberts's pro se motion for a new trial finding the verdict was not contrary to the weight of the evidence.

Roberts argues the district court abused its discretion by refusing to place him on probation so he could get mental-health counseling in the community.

Roberts had a history of difficulties complying with probation. The court's colloquy showed it considered the safety of the community and Roberts's need for rehabilitation. The court was presented evidence of Roberts's prior, unsuccessful experience on probation and his need for mental-health treatment. The court considered a community-based residential facility but concluded it was not an appropriate option. We cannot say the court abused its discretion.

**AFFIRMED.**