# IN THE COURT OF APPEALS OF IOWA

No. 17-0588
Filed January 24, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DONALD DEAN GRIDLEY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Myron L. Gookin, Judge.

Donald Dean Gridley appeals the district court decision denying his motion for new trial. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Donald Dean Gridley appeals the district court decision denying his motion for new trial. We find the district court did not abuse its discretion and based its decision on reasonable factual and legal principles. We affirm the district court.

## I. Background Facts and Proceedings

Gridley previously appealed his conviction for homicide by vehicle, in violation of Iowa Code 707.6A(3) (2013). *State v. Gridley*, No. 14–1773, 2016 WL 5930002, at *1 (Iowa Ct. App. October 12, 2016). This court affirmed the conviction but remanded the case to the district court in order to apply the correct weight of the evidence standard on Gridley's motion for new trial. *Id.* at *5. Our court found the following facts:

> Gridley and his father attended a funeral. At the reception, Gridley estimated he consumed at least seven or eight alcoholic drinks. Early the following morning, a deputy sheriff responded to a 911 call from a farmhouse. Gridley was outside. Gridley told the deputy he was involved in a vehicle accident and thought "his dad was possibly dead." The deputy noted that Gridley had "bloodshot, watery eyes, . . . slurred speech, [and] [smelled] of alcohol." He surmised Gridley had been drinking. A urine test taken several hours later revealed "a urine alcohol concentration of 0.198 grams per 67 mils of urine," a level that, according to the tester, could impair an individual. The test also was positive for marijuana metabolites, oxycodone, and benzodiazepines.
>
> The deputy drove Gridley to the scene of the accident. He found Gridley's father pinned on the floorboard of the passenger side of the vehicle, facing the passenger side door. The deputy did not see "any evidence that [Gridley's father] was moved from the driver's seat to the passenger seat." Other witnesses who arrived at the scene confirmed the impracticability of Gridley's assertion that he had repositioned his father.
>
> Two volunteer firemen at the scene heard Gridley ask, "Did I kill my father? Is he going to die? Did I kill my father?" A paramedic testified Gridley "initially admitted that he was the driver of the vehicle." While the paramedic conceded Gridley "seemed confused," he stated the confusion was "just over [his] questions later."

A deputy sheriff testified he "saw a red mark on [Gridley's] chest" that "resembled a steering wheel mark." A state trooper agreed with the prosecutor that "damage to a steering wheel" could "cause injuries to the driver of [a] vehicle" and this evidence could be used to identify the driver. An agent with the department of criminal investigation opined that two blood samples collected from the steering wheel and driver's side of the dashboard "matched the known profile of Donald Gridley." Gridley's father "was eliminated as the source of the DNA found on those two samples."

*Id.* at *1. Gridley's father was removed from the vehicle and later died of his injuries.

Gridley points to several pieces of evidence to support his claim he was not driving including, having no broken bones or fractures, several witnesses testifying Gridley's father was the only person allowed to drive the truck, and a witness who saw Gridley standing by the passenger door when leaving the reception.

A trial was held, and a jury found Gridley guilty. Gridley appealed, and our court found the district court applied an improper standard when denying the motion for new trial and remanded the case to the district court. After applying the proper standard, the district court denied the motion. Gridley now appeals.

## II. Standard of Review

"The district court has broad discretion in ruling on a motion for new trial. We reverse where the district court has abused that discretion. . . . [Gridley] must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (citations omitted). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the

trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.*

### III. Motion for New Trial

Gridley claims the district court abused its discretion by finding the weight of the evidence supported the conclusion he was driving the vehicle and, therefore, denying his motion for new trial. The district court made specific and expansive credibility findings:

> The court hereby applies the "weight of the evidence" analysis to the evidence in this case, considering the credibility of the evidence and making an independent determination of whether the more credible evidence supports the Defendant's claim that he was not driving the vehicle or the State's claim that Defendant was driving the vehicle. In applying this analysis, the court considers the following:
>
> 1. Observation of the Defendant's appearance and demeanor at trial, as well as the appearance and demeanor of the State's witnesses;
>
> 2. Defendant's selective memory and testimony, including his admitted intoxication, his refusal to submit to alcohol testing, his conflicting versions of who had been operating the vehicle, and his questions to firefighters at the scene, "Did I kill my father? Is he going to die? Did I kill my father?"
>
> 3. The victim being pinned on the floorboard of the passenger side of the vehicle in a manner that would make it impractical to believe Defendant's claim he repositioned the victim from the driver's side to the passenger side, combined with no evidence indicating the victim's body had been moved.
>
> 4. Defendant's blood on the driver's side of the vehicle and contusions on Defendant's chest that resembled a steering wheel.
>
> 5. Defendant's bias, candor and motivation to be untruthful and the lack of bias or motivation on the part of the State's witnesses to be untruthful.

The district court went on to conclude Gridley's "testimony he was not the driver of the vehicle is not credible or believable, despite other witnesses' testimony that the victim rarely, if ever, let anyone drive his truck." Finally, the district court found "the State's witnesses' testimony concerning their investigation of the

accident and their observations and opinions that [Gridley] was driving the vehicle at the time of the crash" to be credible and believable."

Gridley claims the district court abused its discretion by ignoring the evidence and testimony favorable to him. We find this evidence alone, especially when balanced against evidence contrary to Gridley's claims, is not sufficient to show "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Reeves*, 670 N.W.2d at 202.

The district court reasonably relied on the wealth of evidence contradicting Gridley's statements denying he was the driver, including investigatory reports, blood tests, a technical collision investigation, and Gridley's own repeated question, "Did I kill my father?" The district court's credibility findings show a reasonable reliance on the facts before it as well as consideration of many other factors. Therefore, we affirm the district court.

**AFFIRMED.**