# IN THE COURT OF APPEALS OF IOWA

No. 23-0813
Filed December 18, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AUSTIN MARIO GARCIA-SHOEMAKER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Tama County, Andrew Chappell, Judge.

A defendant appeals his conviction for third-degree sexual abuse. **AFFIRMED**.

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A jury found Austin Garcia-Shoemaker guilty of third-degree sexual abuse after a four-day trial.  Garcia-Shoemaker moved for a new trial, arguing that the jury's verdict was contrary to the weight of the evidence.  The district court disagreed.  And Garcia-Shoemaker appeals, seeking reversal of his conviction and a new trial because the jury's conclusion that any sex act with his cousin had been "by force or against the will" of his cousin was contrary to the weight of the evidence.  Iowa Code § 709.4(1)(a) (2021).

But the district court did not abuse its discretion in denying Garcia-Shoemaker's motion for a new trial.  The court reasoned that the weight of the evidence does not preponderate heavily against the guilty verdict.  It found the "*very* credible" testimony of Garcia-Shoemaker's cousin, the DNA evidence on the clothing and bedding, and the medical examination all support the finding of guilt.  And the contrary evidence relied on by Garcia-Shoemaker is not so great that we can say the court should have granted a new trial.  We thus affirm the conviction.

I.

One Saturday in November 2021, then-twenty-four-year-old Garcia-Shoemaker spent most of the evening with his seventeen-year-old female cousin.  After stints of hanging out at a mutual friend's house and a trip to a liquor store, the two ended up at his mother's house, where Garcia-Shoemaker was staying.  As she arrived, the cousin saw his mother's car in the driveway but thought no one was home because she saw no one else when they walked through the house to Garcia-Shoemaker's first-floor room.  In his room, they drank alcohol, talked, and watched TikTok videos on their phones for much of the night.

Eventually, they both fell asleep. According to her testimony, the cousin woke up to Garcia-Shoemaker on top of her, removing her pants. He held her down and "forced his penis inside of [her] vagina." She told him to get off her and to stop. And she tried to roll out from under him and fight him off, but he had her arms pinned down tightly. After a few minutes, Garcia-Shoemaker finally removed himself and rolled back over on the bed.

The cousin got up to use the bathroom and noticed a blood stain on the bed sheets. It stung when she urinated. And when she wiped, she noticed more blood on the toilet paper. She then went into the living room, and she heard Garcia-Shoemaker go into the kitchen. She returned to the bedroom in hopes of avoiding Garcia-Shoemaker and then fell back asleep. When she woke up in the morning, she gathered her things and left without talking to Garcia-Shoemaker or his mother who were both sitting in the living room.

Over four days, the cousin told other people what had happened to her, including two of her extended relatives, a friend, two school employees, her sister-in-law, her mother, and her father. The school contacted the Tama Police Department, which set up a Child Protection Center visit. There, the cousin took part in an interview and underwent a physical examination that revealed her hymen was folded over, making it hard to see, and there was a "criss-crossy pattern" on some tissue below the hymen. She had a follow-up appointment ten days later to ensure everything was healing properly. And the second exam revealed a vaginal laceration. The nurse that performed this examination testified that both forms of injury aligned with blunt force trauma. The nurse also testified that the injuries did not reveal whether any sex act was nonconsensual.

Later that month, the police executed a search warrant on Garcia-Shoemaker's home. Garcia-Shoemaker denied to the police that anything happened between him and his cousin. The police collected the bed sheets from his room, where they discovered a blood stain on the mattress protector. And later DNA testing confirmed that the blood on the sheets belonged to Garcia-Shoemaker's cousin. The police also took Garcia-Shoemaker's phone and collected DNA samples from him.

When the police returned Garcia-Shoemaker's phone to him in April 2022, he agreed to their request to talk with him further. Like before, he first denied that any sexual act had occurred. But as the interview went on, he said that if any sex act had occurred it was consensual or he did not know it happened.

In May 2022, Garcia-Shoemaker was arrested for third-degree sexual abuse, a class "C" felony. *See* Iowa Code § 709.4(1)(a). A four-day jury trial was held in February 2023. And the jury found Garcia-Shoemaker guilty as charged. Garcia-Shoemaker moved for a new trial, arguing that the jury's verdict was contrary to the weight of the evidence.

The district court denied Garcia-Shoemaker's motion. The court carefully considered the evidence presented at trial and found that the jury's verdict was not "contrary to the weight of the evidence" and was not "in any way a miscarriage of justice." The court first noted that Garcia-Shoemaker's shifting explanations to police—including his later interview in which he "equivocated, and either implied or inferred that, in the event some sex act had actually occurred, it must have been consensual"—gave a basis to find a sex act occurred and focused the dispute on whether the act was consensual.

The court then rejected Garcia-Shoemaker's arguments that the evidence preponderates in his favor. It reasoned that even though the crime-lab documents did not confirm that a sex act occurred between the cousin and Garcia-Shoemaker because the spermatozoa sample was "too weak for identification," they did "clearly show evidence of [the cousin's] DNA along with the presence of someone's spermatozoa." So that evidence did not suggest that no sex act occurred between Garcia-Shoemaker and his cousin, but rather "just as easily supports the idea that a sex act occurred—whether consensual or otherwise." The court concluded the same about the medical-examination evidence, where the nurse could not confirm or deny whether an assault had taken place—reasoning that it too did not "necessarily support[] [Garcia-Shoemaker's] innocence."

As for Garcia-Shoemaker's long-term arm injury, the court found that the evidence "was not so credible and convincing that it would necessarily have convinced someone that it would not be possible for [Garcia-Shoemaker] to have pinned" the cousin down. Similarly, the court found that the jury would "be free to disbelieve" the mother's testimony about what she heard that night, which was contradictory to the cousin's testimony. And that the mother was "arguably less credible" because of her demeanor during cross-examination.

Finally, the court found Garcia-Shoemaker's cousin to be "*very* credible" and "very believable," explaining that she provided "significant details about the events leading up to the assault and the assault itself," was "responsive and non-evasive," "was not overly emotional," and "gave no hint of having some agenda against [Garcia-Shoemaker] or that she was even happy to be there testifying."

And the court reasoned that her "description of the incident was supported by the physical evidence" and the crime-lab reports.

The court thus entered judgment against Garcia-Shoemaker and sentenced him to an indeterminate ten-year prison term and a lifetime special sentence. Garcia-Shoemaker now appeals, again arguing that a new trial should have been granted because the verdict was contrary to the weight of the evidence.

## II.

Under our rules of criminal procedure, a defendant may request a new trial when a verdict is "contrary to law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). "A verdict is contrary to the weight of the evidence only when a greater amount of credible evidence supports one side of an issue or cause than the other." *State v. Wickes*, 910 N.W.2d 554, 570 (Iowa 2018) (cleaned up). A new trial should be granted only when "the evidence preponderates heavily against the verdict rendered" and if the "verdict rendered was a miscarriage of justice." *Id.* (cleaned up). The district court is to "weigh the evidence and consider the credibility of witnesses." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (cleaned up). The district court should only grant a request for a new trial in "extraordinary case[s]." *State v. Linderman*, 958 N.W.2d 211, 223 (Iowa Ct. App. 2021) (cleaned up).

We review a district court's denial of a motion for a new trial challenging the weight of the evidence for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). We do not make our own assessment of whether the verdict is contrary to the evidence but rather analyze only whether the district court abused its discretion in denying the new trial. *Wickes*, 910 N.W.2d at 564. And "[t]he district court has broad discretion in ruling on a motion for new trial." *Reeves*, 670

N.W.2d at 202. So we will reverse as an abuse of discretion only when "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

Garcia-Shoemaker contends that the evidence here "preponderated heavily against the guilty verdict on the 'by force or against the will' element of the Sexual Abuse offense." He claims his mother's testimony that she heard no struggle or yelling, his long-term injury to his arm, and testimony about his cousin's feelings toward him and her past behaviors were not given the proper weight by the court. And he points to the lack of certain evidence—phone records, social media records, testimony from the cousin's extended family, and some medical records—as further weighing against the verdict.

But none of these arguments give any basis for us to conclude that the district court abused its considerable discretion in ruling on Garcia-Shoemaker's motion for a new trial. As set forth above, the court considered all the evidence that Garcia-Shoemaker pointed to and detailed why the evidence did not weigh against the verdict. The court assessed the credibility of Garcia-Shoemaker's mother, sister, and cousin—as it should have and we cannot. *See id.* at 203 (explaining that "appellate court[s] neither sit to judge credibility of witnesses nor to reweigh the evidence"). The court's thorough reasoning for denying Garcia-Shoemaker's motion was not "clearly untenable" or "clearly unreasonable." *Id.* And so, we affirm the district court's ruling and Garcia-Shoemaker's conviction.

**AFFIRMED**.