# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1708
Filed April 15, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Walter Mackey Pacheco Belen,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Heather Lauber, Judge.

———————————

**AFFIRMED**

———————————

Thomas M. McIntee, Williamsburg, attorney for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

Walter Pacheco Belen appeals his conviction for stalking in violation of a protective order—a class "D" felony at the time of his offense. *See* Iowa Code § 708.11(3)(b)(1) (2022).[1] He challenges the district court's (1) denial of his request for a bench trial on the first morning of his jury trial; (2) denial of his motion for a new trial; and (3) evidentiary rulings excluding proposed evidence to impeach the victim and admitting allegedly improper opinion testimony by a detective.

The district court's denial of Pacheco Belen's request for a bench trial—as required by Iowa Rule of Criminal Procedure 2.17(1)—did not violate his constitutional rights. The court applied the correct standard and did not otherwise abuse its discretion in rejecting Pacheco Belen's argument that the jury's verdict was against the weight of the evidence, and his other arguments for a new trial are not properly before us. And Pacheco Belen's challenges to the court's evidentiary rulings are not preserved for our appellate review. We thus affirm Pacheco Belen's conviction.

## I.    Background Facts and Proceedings

During a four-day jury trial, the jury heard evidence that Pacheco Belen and the victim began a romantic relationship in November 2021. Their relationship was "on and off" before the victim tried to end it because she felt unsafe due to Pacheco Belen's erratic and aggressive behavior—including physical abuse and threats to have her deported if she did not stay in a relationship with him.

---

[1] Effective July 1, 2023, this offense became a class "C" felony and moved to a new provision of the Iowa Code. *See* 2023 Iowa Acts ch. 74, § 13 (codified at Iowa Code § 708.11(3)(a)(1) (2026)).

But Pacheco Belen still had much contact with her. In February 2023, the district court issued a five-year criminal no-contact order against Pacheco Belen protecting the victim. Even so, he repeatedly violated the order.

Pacheco Belen offered evidence that on multiple occasions, after the relationship ended and after the no-contact order was in effect, the victim initiated contact with him. Most of these encounters occurred in the first half of 2023. Evidence was presented that the victim brought Pacheco Belen gifts to his apartment on Valentine's Day. The victim admitted under cross-examination that one night in May, she had Pacheco Belen over to her house and they were smiling and joking. Pacheco Belen's neighbor believed the two lived together because her car was there so often.

Still, in early June 2023, Pacheco Belen again was at the victim's place of business. He was "knocking on and looking into windows for the victim." The situation came to a head on October 16, 2023, when the victim went to her local gym where she had been a member for five years. Security footage shows that the victim walked into the gym, noticed Pacheco Belen on a cardio machine, and immediately turned around and walked away. She had never seen him at the gym before. The victim walked to the front desk and Pacheco Belen got off the cardio machine to follow her. They both spoke to the gym staff, seemingly arguing for about ten minutes. Pacheco Belen then made a phone call. And a few moments later, the victim walked out of the gym and Pacheco Belen again followed.

The victim had been on FaceTime with a friend and Pacheco Belen too recorded everything once in the parking lot. Both videos were shown to the jury. The victim was in her car, parked, when another car stopped behind her, blocking her avenue to back out of the spot. The person in that car was Pacheco Belen's mother, who then got out of the car and approached the

victim's driver's side window. The mother screamed at the victim and smacked her hand on the car window. Pacheco Belen also went to the window and recorded the victim on a cell phone as she sat in her car. The victim eventually drove off—unable to complete a workout as she had planned.

The victim returned home and called Pacheco Belen's probation officer—believing the incident to be over. But as she left for work about an hour later, Pacheco Belen and his mother, in separate cars, were waiting on the victim's route and followed her for some time. The victim returned home instead of going to work. After waiting at home for some time, the victim went to the police station to report the incident.

The State eventually charged Pacheco Belen with stalking in violation of a protective order for offenses against the victim spanning from April 3, 2022, through October 16, 2023—the day of the incident at the gym.[2]

The night before his jury trial was scheduled to start, Pacheco Belen informed his counsel that he wanted to waive his right to a jury trial and proceed with a bench trial. The State did not consent. And the next morning, the district court denied his request for a bench trial and proceeded with the jury trial.

The jury found Pacheco Belen guilty. And the district court sentenced him to an indeterminate five-year prison sentence to be served consecutive to sentences for other convictions not at issue here. Pacheco Belen now appeals, challenging only his conviction.

---

[2] An earlier trial information charged that the stalking began on February 1, 2022. But after Pacheco Belen raised double-jeopardy concerns—based on overlapping dates with another conviction—in the middle of trial, the court granted the State's request to amend the trial information to remove the overlap.

## II. Request for a Bench Trial

Pacheco Belen first challenges the court's denial of his request for a bench trial, arguing that the denial and the court's failure to inform him directly of the process for waiving a jury trial violates his rights to due process and a fair trial under our state and federal constitutions. *See* Iowa Const. art. I, §§ 9–10; U.S. Const. amends. VI, XIV. But Pacheco Belen's arguments fail.

Although criminal defendants have a constitutional right to a jury trial under both constitutions that can be waived, neither grants "a right to a trial by the court." *State v. Siemer*, 454 N.W.2d 857, 865 (Iowa 1990); *see also Singer v. United States*, 380 U.S. 24, 36 (1965) (rejecting "the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process" because the "only constitutional right concerning the method of trial is to an impartial trial by jury"). So the process for waiving a jury trial may be regulated by statute or rule, like Iowa Rule of Criminal Procedure 2.17(1). *See Seimer*, 454 N.W.2d at 865; *Singer*, 380 U.S. at 36–38. And Pacheco Belen makes no argument—nor could he—that the court improperly applied rule 2.17(1) in denying his request when it was made on the first day of trial and the State did not consent to the request. *See* Iowa R. Crim. P. 2.17(1) ("Any waiver of a jury trial must occur at least 10 days prior to trial unless the prosecuting attorney consents."). Because Pacheco Belen had no constitutional right to a bench trial, his arguments based on the existence of such a right are without merit.

## III.    Motion for a New Trial

Pacheco Belen next challenges the court's denial of his motion for a new trial because the verdict was contrary to the weight of the evidence.[3] *See* Iowa R. Crim. P. 2.24(2)(b)(7) (authorizing court to grant a new trial "[w]hen the verdict is . . . contrary to the weight of the evidence"). "A verdict is contrary to the weight of the evidence only when a greater amount of credible evidence supports one side of an issue or cause than the other." *State v. Wickes*, 910 N.W.2d 554, 570 (Iowa 2018) (cleaned up). A new trial should be granted only when "the evidence preponderates heavily against the verdict rendered" and if the "verdict rendered was a miscarriage of justice." *Id.* (cleaned up). The district court must "weigh the evidence and consider the credibility of witnesses." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (cleaned up).

We review rulings on motions for a new trial based on a weight-of-the-evidence challenge for an abuse of discretion. *State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021). We do not make our own assessment of whether the verdict is contrary to the evidence but rather analyze only whether the court abused its discretion in denying the new trial. *State v. Stendrup*, 983 N.W.2d 231, 246

---

[3] Pacheco Belen also argues that the court should have granted a new trial for two more reasons—because the prosecution subjected him to double jeopardy in violation of the Fifth Amendment and because the court improperly permitted the State to amend its trial information to limit the date range to avoid double-jeopardy concerns. But while he raised these arguments in his motion, the district court did not rule on them in its oral ruling at the start of the sentencing hearing. And even after the court asked his counsel whether there was "[a]nything else . . . with regard to the motion," he did not bring these other two grounds for a new trial to the court's attention. So error is not preserved for our review on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

(Iowa 2022). And "[t]he district court has broad discretion in ruling on a motion for new trial." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). So we will reverse as an abuse of discretion only when "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

Pacheco Belen argues that the court failed "to engage in an independent evaluation of the evidence and fail[ed] to make key credibility determinations of the witnesses." He points to the evidence of consensual encounters between Pacheco Belen and the victim during the charged period—including the testimony of Pacheco Belen's neighbor who believed the two lived together because "[s]he was there often."

But the district court *did* consider the credibility of witnesses and the consensual encounters between Pacheco Belen and the victim. It reasoned:

> The Court has applied [the weight-of-the-evidence] standard in this case. In doing so, the Court has, as Mr. Pacheco indicated in his motion, also evaluated the credibility of the witnesses in deciding whether or not the verdict entered in this case was entered contrary to the weight of the evidence.

> And in this case, the Court finds it was not and that a new trial is not warranted in this case. The testimony that was admitted at trial certainly showed that there was a course of conduct wherein Mr. Pacheco had repeated contact with the victim in this case. . . . The Court understands Mr. Pacheco's argument, that some of that contact may have been at least not objected to by [the victim] in the moment, however, the weight of the evidence is that [the victim] did, in fact, feel frightened and intimidated by Mr. Pacheco certainly on more than one occasion, which would be sufficient for the course of conduct, including but not limited to, the incident that occurred at the [gym] center, as well as through various times throughout the relationship.

> The Court also found [the victim's] testimony to be credible when she testified to the fact that she was scared, because of the dynamic

between her and Mr. Pacheco, to leave and that some of the contact between them, although voluntary in the nature that nobody took her there, was certainly not wanted because she was afraid of the repercussions if she had not allowed that contact to occur.

The Court did also consider the testimony of . . . a neighbor that testified in that trial on behalf of Mr. Pacheco, and that testimony did also show that there were—there was frequent contact between the two. However, the dates of that contact and the dates of the contact testified to throughout the trial were still not close in time to the incident that occurred at the [gym], and that bolsters the credibility of [the victim] when she said there was a point in time when she decided to cut off that relationship in its entirety.

For those reasons, the Court does deny the Motion for a New Trial.

We see nothing "clearly untenable" or "clearly unreasonable" in this reasoning. *Id.* The court applied the correct standard, independently weighing the evidence and the witnesses' credibility. Pacheco Belen's arguments on appeal essentially ask us to re-weigh the evidence ourselves. But that is not our role. The court did not abuse its considerable discretion in rejecting Pacheco Belen's weight-of-the-evidence challenge to the verdict.

## IV.   Evidentiary Rulings

Finally, Pacheco Belen challenges several evidentiary rulings. But we cannot consider the merits of any of these challenges because he did not preserve error on the claims he now raises on appeal.

At trial, Pacheco Belen sought to admit two videos and the testimony of three witnesses solely for the purpose of impeaching the victim after she had already testified. The court excluded or confined the proposed evidence, among other reasons, under Iowa Rule of Evidence 5.613(b) because the victim had already testified and "would have had to be asked about this evidence specifically and given an opportunity to respond before . . . any

extrinsic evidence was offered to prove that her statement was inconsistent." *See* Iowa R. Evid. 5.613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."). Pacheco Belen now argues only—and for the first time—that court should have admitted the evidence under the "justice so requires" exception of rule 5.613(b). But because he did not raise this argument for admissibility in the district court and the court did not rule on it, it is not preserved for our review on appeal. *See State v. Zacarias*, 958 N.W.2d 573, 586–87 (Iowa 2021) (holding that defendant who did not argue for admissibility under the "justice so requires" exception of rule 5.613 failed to preserve error).

Pacheco Belen also argues for the first time on appeal that the "court erred by allowing improper opinion testimony" from a detective called by the State. Again, Pacheco Belen failed to preserve error because he did not object to any of the detective's testimony as improper opinion testimony at trial. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). So we cannot consider the merits of this evidentiary challenge either.

**AFFIRMED.**