# IN THE COURT OF APPEALS OF IOWA

No. 19-1957
Filed February 3, 2021

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ALEX LAINE SPIKER,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Henry County, Mark E. Kruse, Judge.


     A defendant appeals his conviction for sexual abuse in the third degree.

**AFFIRMED.**


     Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

     Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


     Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A jury found Alex Spiker guilty of sexual abuse in the third degree for committing a sex act without consent. Spiker seeks a new trial. On appeal, he argues (1) the district court should have granted a mistrial or new trial based on the prosecution's late disclosure of exculpatory evidence, and (2) the court erred in denying his motion to continue the trial based on newly discovered evidence. Because Spiker failed to preserve error on his first claim and waived error on his second claim, we affirm the court's rulings and uphold the conviction.

## I.       Facts and Prior Proceedings

Late one night in April 2018, S.N. visited a bar in Mount Pleasant for some drinks. She joined only two other patrons, including Spiker. S.N. recognized Spiker from previous visits to the bar though they weren't on a first-name basis. They started chatting and quickly bonded over a mutual friend, and Spiker's co-worker, Steven Reitz. S.N. grew more comfortable conversing with Spiker, knowing he worked with her close friend. Reitz was also S.N.'s neighbor.

Around 2:00 a.m., S.N. tried calling her ex-boyfriend, Devin, for a ride home but received no response. She lived about a half hour away from the bar. When S.N. explained her situation, Spiker offered to drive her home. S.N. agreed.

Rather than taking the main highway, Spiker took a "back route" consisting of gravel roads. During that drive, Spiker pulled over several times to make advances toward S.N. She recalled him groping her inner thighs and moving to kiss her. He also tried to "rub her vagina." S.N. told him "no" and scooted closer to the passenger-side door. Yet he ventured to grope her five or six more times. S.N. testified she said "no" after each advance.

To deter the unwanted attention, S.N. called her long-time friend, Joshua Jerrel. During their conversation, Jerrel advised her "to get the vehicle to stop so she could call for help." He also told her to call the police. But S.N. never did. She reasoned: "I only had one percent left on my phone. I didn't think that [police] would be able to find me."

After the phone call, S.N. asked Spiker to stop the car so she could go to the bathroom. In an isolated area, S.N. walked toward the ditch and urinated. Before she could pull up her pants, Spiker "came over and pushed [her] down." S.N. testified that he thrusted her legs over her head, spit on her vagina, and then inserted his penis into her vagina. S.N. later reported Spiker also placed his fingers in her anus. After about a minute of intercourse, Spiker stopped and walked back to the car.

Once S.N. returned home, she messaged Reitz for help. Reitz picked her up and took her to his place two blocks away. He testified S.N. was "emotionally distraught" and "smelled of urine." While she was confiding in Reitz, S.N. received a Facebook message from Spiker. He apologized for "whatever happened tonight" and pleaded with her not to tell anyone. After that, Spiker sent a couple more messages asking S.N. to respond.

Around 4:00 a.m., Spiker drove back to S.N.'s house and sent her another message: "Come outside real quick please." S.N. and Reitz met him outside. Reitz recalled a "loud exchange" ensued because he was "irate" with Spiker. Reitz hit Spiker in the stomach and kneed him in the side, but Spiker did not fight back. The noise awoke Devin, who was staying at S.N.'s house. When S.N. said "this guy raped me," Devin "proceeded to take Spiker to the ground and just pummel him."

Soon Henry County Deputy Richard Stallman and Deputy Aaron Aplara arrived at S.N.'s house.[1]  After breaking up the fight, Deputy Stallman approached Spiker and asked what happened.  Spiker replied, "I'm probably going to prison."  Then Spiker admitted having intercourse with S.N., telling the deputy "he believed it to be consensual at the time, but then afterwards realized that maybe it wasn't."  While Spiker spoke to Deputy Stallman, S.N. and Reitz shared their side of the story with Deputy Aplara.  Based on his initial impression, Deputy Stallman placed Spiker into custody and took him to the sheriff's office for questioning.  After the interrogation, Deputy Stallman informed Spiker he was being charged with sexual abuse in the third degree.

Meanwhile, S.N. went to the Henry County Health Center to undergo a sexual-assault examination.  Based on S.N.'s allegations, the nurse took swabs of her vagina and anus.  Soon after, Deputy Stallman and Deputy Aplara visited with S.N. at the health center.  During their interview, Deputy Stallman took photographs of S.N.'s cell phone to capture Spiker's Facebook messages as evidence.  Deputy Stallman also retrieved the rape kit and several articles of S.N.'s clothing.  Later testing showed Spiker's DNA on the vaginal swabs, as well as on S.N.'s underwear.  No testing was performed on the anal swab.

Ten days after those events, the State charged Spiker by trial information with third-degree sexual abuse, accusing him of "performing a sex act against [S.N.'s] will or by force."  See Iowa Code §§ 709.1, 709.4(1)(a), and 903B.1 (2018).

---

[1] The officers received a disturbance call from a neighbor after the fight broke out.

In the accompanying minutes of evidence, the State described the probable testimony of S.N., Reitz, and the two deputies.

The next day, April 17, Spiker moved to produce "any recorded statements of [him] or any witnesses interviewed"; "all text messages, photographs or other items referenced in the minutes of testimony"; and "all documents, reports, photographs or other items not otherwise requested which the state intends to show to the jury at any time during the course of trial." In June 2018, defense counsel deposed S.N., Reitz, and Deputy Stallman.

Through their depositions, defense counsel learned the sheriff's office had digital copies of Spiker's Facebook messages.[2] Deputy Stallman recalled he did not send copies to the county attorney's office. He said: "Once they're requested, we'll be happy to send them over." When asked about the rape kit, Deputy Stallman testified he sent it the state crime laboratory for DNA testing. He did not receive the test results until January 2019.[3]

Four months later, and just four days before trial, the county attorney's office provided copies of the State's exhibits to defense counsel. In response, the defense moved in limine to preclude the prosecution from offering three exhibits: (1) digital copies of Spiker's Facebook messages; (2) a Google Maps image highlighting the route Spiker drove on the night of the alleged assault; and

---

[2] Deputy Stallman testified that he took pictures of S.N.'s cell phone but did not seize the phone.

[3] After ignoring several court orders, Spiker provided two mouth swabs to the sheriff's office on January 3. The next day, the state criminalist reported that Spiker's DNA matched the DNA profile of the sperm traces found on S.N.'s underwear and vaginal area.

(3) an information sheet summarizing S.N.'s description of the sex act.[4] The motion asserted the State's disclosure was untimely and the evidence lacked foundation in the minutes of evidence.

On the morning of trial, the district court held a hearing on Spiker's motion. In defending the late disclosure, the prosecutor claimed he discovered the evidence a few days before trial and provided the exhibits to defense counsel "within hours" of receiving them.[5] The prosecutor explained: "I never had them in any other way, and law enforcement didn't get them." Still, Spiker's attorney argued the April 17 motion to produce placed "some duty on the State to go get the documents that they know they're going to use or that have been requested." The court sustained the defense motion on the first two exhibits but noted the State could make an offer of proof for admission during trial.[6]

After the State's opening statement, the court recessed and reconvened with counsel on the record. The defense moved for a mistrial, claiming the State violated Iowa Rule of Criminal Procedure 2.14(2)(a)(1) by failing, during pretrial discovery, to produce copies of messages sent from Spiker's Facebook account. In resistance, the State argued it made little difference for Spiker to have copies, claiming the defense knew about the contents of those messages through

---

[4] The information sheet stated: "Patient reports [Spiker] spit on her vagina, fingers were placed in her anus, no condom used, patient unsure of ejaculation but states she felt like something is dripping from her vagina, patient report[s] spit was on her clitoris and inner thighs."

[5] According to the prosecutor, S.N. printed out the Facebook messages and Google Maps image from her cell phone and provided copies to the county attorney's office five days before trial. As to the third exhibit, the prosecutor said he unknowingly came across the victim information sheet at the sheriff's office.

[6] The State agreed to exclusion of the victim information sheet from its exhibits list.

depositions. The court agreed the State violated discovery rule 2.14. But the court denied the mistrial motion. Instead, the court granted a continuance for the defense to depose S.N. about the relevant messages.

On the second day of trial, the defense renewed its request for mistrial and as an alternative, requested a continuance. Just that morning, Spiker's attorney deposed the sexual assault nurse examiner, Julie Humes, and discovered for the first time the rape kit included an anal swab. The nurse testified she wrote down S.N.'s description of the sex act, including the statement that "fingers were placed in her anus." Based on the nurse's testimony, Spiker's attorney insisted a DNA test of the anal swab was crucial before trial continued. He urged: "[I]f there are medical records that would show there is no damage or it doesn't appear that anything was inserted into her anus that would certainly be beneficial."

In resistance, the prosecutor asserted neither a mistrial nor continuance was appropriate. Instead, the State agreed to tell the jury that "there was no testing done on [the anal swab]," that "there were no anal injuries and that there was no DNA found." The State reminded the court "the charge is for vaginal rape, not an anal rape." Because the defense accepted the stipulation, the court overruled both motions.

During trial, the State offered testimony from S.N., Deputy Stallman, Reitz, and Humes. The court overruled the defense motion in limine and allowed the jury to consider the exhibits at issue. Spiker took the stand in his own defense. He testified the sexual intercourse with S.N. was consensual. After hearing all the evidence, the jury found Spiker guilty as charged.

In June 2019, Spiker filed a motion for new trial, reprising the same issues as his motion for mistrial. Finding Spiker suffered no prejudice from the late disclosure of evidence under the Iowa rules of criminal procedure, the court denied the motion. The court sentenced him to a prison term not to exceed ten years.

Spiker now appeals.

## II. Scope and Standard of Review

Spiker challenges the district court's rulings on his mistrial or new trial motions and request for continuance. We review both the denial of a mistrial and new trial for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017) (motion for mistrial); *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003) (motion for new trial). We reverse only if the denial was based "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* We apply that same standard when considering the denial of a continuance.[7] *State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012). Because the decision "lies within the broad discretion of the trial court," we do not disturb the court's ruling "unless an injustice has resulted." *State v. Leutfaimany*, 585 N.W.2d 200, 209 (Iowa 1998).

## III. Analysis

### A. Motions for Mistrial and New Trial

### 1. Brady Rule

Spiker argues the district court erred in denying his motion for new trial, claiming the State's late disclosure of potentially exculpatory evidence violated his

---

[7] Spiker asserts the correct standard of review is de novo because his claim implicates his constitutional right to present a defense. But he makes no arguments on how the denial of a continuance deprived him due process or a fair trial. We choose to apply the general rule.

due process rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). He claims the prosecution's failure to provide this evidence sooner "prevented [him] from receiving a fair trial."

The State contests error preservation, arguing the district court never ruled on the *Brady* issue. We agree Spiker's failure to preserve error prevents us from reaching this claim. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Although Spiker did raise a *Brady* claim in his motion for new trial, the court did not rule on the issue. In fact, the court overlooked it. In citing the grounds for relief, the court stated:

> The motion does not cite any particular ground but would appear to implicate Rule 2.24(2)(b)(9), "when from any other cause the defendant has not received a fair and impartial trial" and/or "when the court has misdirected the jury in a material matter of law, or has erred in the decision of any question of law during the course of the trial, or when the prosecuting attorney has been guilty of prejudicial misconduct during the trial thereof before a jury."

So the court followed the framework under rule 2.24(2)(b) in determining whether a new trial was warranted. Because the court did not conduct a separate constitutional analysis under *Brady*, we likewise decline to do so on appeal.

## 2. Discovery Violation

Spiker also asserts the State's late disclosure of his "written or recorded statements" violated Iowa Rule of Criminal Procedure 2.14(2)(a)(1). He claims the prosecution knew or should have known the sheriff's office had digital copies of his

Facebook messages from the night of the assault and therefore had a duty to disclose them.

The State raises two counterarguments. First, the State argues we should reject Spiker's claim because "he does not actually explain why [a rule 2.14 violation] would entitle him to a new trial." Second, the State contends Spiker suffered no prejudice from the discovery violation because the defense had notice of the "substance" of the messages through other means.

Rule 2.14(2)(a)(1) requires the State to disclose "[a]ny relevant written or recorded statements made by the defendant or copies thereof, within the possession, custody or control of the state, unless same shall have been included with the minutes of evidence accompanying the indictment or information." Because the State did not provide copies of his recorded statements until four days before trial, Spiker sought a mistrial, claiming the late disclosure was prejudicial.

Although agreeing the State committed a discovery violation, the district court declined to grant a mistrial. Instead, the court allowed a one-day continuance for the defense to depose S.N. about the messages. In overruling Spiker's motion for new trial, the court relied on *State v. Piper*, 663 N.W.2d 894 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).[8]

On appeal, Spiker does not specify how the district court abused its discretion in denying his motions under rule 2.14(2)(a)(1). He contends the State violated the rule by failing to timely provide copies of his statements. But he does

---

[8] In *Piper*, the Iowa Supreme Court found the State's late disclosure of evidence did not prejudice the defense because the trial court gave additional time for discovery and granted recesses during trial to resolve any issues. 663 N.W.2d 896.

not assert he was prejudiced by the discovery violation. In his appellant's brief, Spiker conflates his arguments under the *Brady* rule and Iowa Rule of Criminal Procedure 2.14(2)(a)(1). But these rules raise distinct legal issues. *See State v. Land*, No. 11-1417, 2013 WL 104836, at *3 (Iowa Ct. App. Jan. 9, 2013) (applying different standards of review for *Brady* claim involving constitutional right to due process and "district court's administration of discovery rules"). Because Spiker provides no independent analysis on the discovery rule, he waives the issue. *See* Iowa R. App. P. 14(a)(3); *see also State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001) ("When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived.").

For these reasons, we affirm the district court orders denying the motion for mistrial and motion for new trial.

## B. Motion to Continue

Next, Spiker contends the district court abused its discretion in denying his motion to continue the trial based on newly discovered evidence. He asserts the State's late disclosure of rape-kit evidence involving allegations of anal penetration violated his right to present a defense. He claims he "should have been afforded the right to examine and test the validity of the evidence." In his view, testing of the anal swab could have helped his defense because he "could have shown that [his] DNA was not on the swab, that his fingers were not inserted into the anus of [S.N.] and therefore that the allegations of [S.N.] were false."

The State lodges another error-preservation challenge, claiming Spiker "waived this claim by stipulating that his DNA was not found on [S.N.'s] anus and [S.N.] suffered no injury to her anus." We agree.

To preserve error for appeal, a party "cannot both object and consent to evidence." *State v. Schmidt*, 312 N.W.2d 517, 518 (Iowa 1981). After a party objects, a "subsequent affirmative act amounting to an express or implied assent to the reception of the evidence" waives that objection. *Id.* (quoting 89 C.J.S. Trial § 661 (1955)). So in this context, the question is whether "[Spiker], through trial counsel, *affirmatively* consented to the admission of specific testimony or other evidence at trial that had been subject to a prior objection." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003) (citations omitted).

Spiker challenged the rape-kit evidence twice during trial. First, in his motion in limine to exclude a victim information sheet containing S.N.'s allegation of anal penetration. Second, in his motion for a continuance to conduct testing on the anal swab for DNA evidence. Both issues were resolved by agreement. On the motion in limine, the State agreed not to bring in the victim information sheet, so the jury never saw that evidence. On the motion to continue, the State offered to stipulate that (1) Spiker's DNA did not appear on the anal swab and (2) there was no anal injury. Defense counsel conditionally agreed: "So I think we'll—okay, so I—I'm fine. I guess we would still need to make sure we make that stipulation to the jury, because there's no one to testify to these matters."

As requested, the district court told the jury: "The State stipulates and agrees there was no injury to the anus of [S.N.] . . . in this case and there was no DNA belonging to Alex Spiker in or around the anus as a result of the incident described on April 6, 2018." In response, defense counsel said: "That is a correct stipulation, Your Honor."

Through defense counsel's statements, Spiker waived his right to object to the anal swab evidence on appeal. Not only did Spiker's trial counsel consent to admission of the rape-kit evidence, he also relied on the evidence in closing argument: "[T]he stipulation is there is no DNA from Mr. Spiker in or around her anus, so what does this give you? This is scientific evidence that disproves her story." So Spiker's claim that the jury never considered the lack of DNA evidence on the anal swab is baseless. Because the stipulation resolved the issues Spiker now raises on appeal, the denial of the motion for continuance was proper. We affirm the court's ruling.

**AFFIRMED.**