# IN THE COURT OF APPEALS OF IOWA

No. 21-0877
Filed August 31, 2022

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**SAM DANIEL ABU YOUM,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Robert B. Hanson (Motion to Suppress) and Lawrence P. McLellan (Trial), Judges.

　　A defendant appeals from the denials of his motion to suppress and motion for a new trial. **AFFIRMED.**

　　Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

　　Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

　　Considered by Greer, P.J., Chicchelly, J., and Mullins, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**GREER, Presiding Judge.**

Sam Abu Youm was convicted of two counts of possession of a controlled substance (eutylone and fentanyl) with the intent to deliver with a firearm and two counts of failure to possess a tax stamp. *See* Iowa Code §§ 124.401(1)(c)(8), (c)(9), (e), 453B.3 (2020). In his present appeal, he argues the district court should have granted both his motion to suppress evidence of an unlawful search and his motion for a new trial based on the weight of the evidence. Because the emergency aid exception allowed for the warrantless entry into and initial search of Abu Youm's apartment and because he presented no alternative course of events for the district court to weigh as more credible, we affirm.

**I. Background Facts and Proceedings.**

The Des Moines Police Department received multiple calls about gunshots at an apartment complex soon after midnight on August 11, 2020. When Sergeant Theodore Stroope arrived on the scene, he was directed to a specific apartment by one of the callers. The caller told Sergeant Stroope that he left his apartment when he heard gunfire and went outside to the parking lot, where he heard someone saying "they were just testing it out" and "it didn't need to go that far." The witness also reported seeing a man lying on the porch of the same apartment. Officer Zachary Vander Ploeg arrived on the scene, and both officers walked toward the apartment identified by the witness. On that course, they noticed an automobile with a broken window and glass on the ground. Men were standing on the balcony the officers had been directed to and they began speaking with the officers—one of those men was Abu Youm, who reported he had not heard any gunshots.

Sergeant Stroope and Officer Vander Ploeg then went inside the apartment building and knocked on the apartment's door; S.O. answered, came out into the hallway, and shut the door behind him. When Sergeant Stroope asked to make sure everyone was okay, S.O. asked if he had a warrant. Sergeant Stroope informed S.O. a warrant was unnecessary because they were only checking to make sure no one was hurt. He entered the apartment over S.O.'s objection. At this point, Abu Youm came inside from the balcony and ardently objected to officers entering the apartment. Sergeant Stroope went out onto the balcony and found a spent .45 ACP nickel-plated shell casing on the ground. He told Officer Vander Ploeg to start handcuffing the five individuals in the apartment and called dispatch to request more officers be sent to the apartment. Abu Youm proceeded to lock himself first in a bedroom and then the bathroom; officers were eventually able to get him handcuffed and in the living room with the rest of the apartment's occupants. He told the officers that this was his apartment and renewed his objections to their entry without a warrant. Officers conducted a plain view search to ensure there was no one else present—during this search, they found a rifle on the floor of a bedroom closet. Once Abu Youm was placed in a police vehicle, he changed his story and told officers he did not live in the apartment and had just arrived.

With this information in hand, the officers obtained a search warrant. During the warranted search, they found additional shell casings matching the one on the balcony and consistent with the rifle as well as a second firearm. In the same closet that the rifle was found, officers located three shoe boxes. Among other things, one shoebox contained medication paperwork with Abu Youm's name on

it, electronic benefits transfer cards in the names of two of Abu Youm's sisters, and a plastic baggie with ten multi-colored pills that, after testing, were determined to be eutylone; the second shoebox held 228 additional eutylone pills and fifty-two pills determined to be fentanyl; and the third shoebox was filled with $752 and Abu Youm's identification card. Officers determined the closet was in the bedroom Abu Youm slept in, but he shared the closet with S.O.

After this investigation was concluded, Abu Youm faced two sets of charges stemming from the event; the first set involved harassment and weapons charges and the present set concerned drug charges. In both, he moved to suppress evidence, claiming the officers' warrantless entry and subsequent search of the apartment violated his federal and state constitutional rights. By the time this case teed up for hearing on the motion to suppress in March 2021, a similar motion had already been heard and denied in the weapons case (FECR340728).[1] Rather than present the same witnesses and evidence again, Abu Youm asked the court to incorporate the other case's "motion to suppress, exhibits, resistance, briefs and ruling" in the present case. The district court granted the motion to incorporate[2]

---

[1] The other set of charges was eventually dismissed by the State.

[2] Upon transfer of this case to our court, we filed an order asking the parties to file statements detailing what the district court considered from FECR340728's file in ruling on Abu Youm's motion to suppress in this case. In their responses, both parties treated the motion to incorporate as a motion to take judicial notice, so we do here as well. We therefore directed the district court clerk to supplement our record with the records from FECR340728. According to the order granting the motion to incorporate, the district court considered the motion to suppress, exhibits, resistance, briefs, and ruling from FECR340728, and we consider the same. But, as no party indicated the district court considered the transcript from FECR340728's motion-to-suppress hearing, and the transcript was not filed until after the district court issued its order on the motion to suppress in the present case, we do not consider it as part of our record. As the lack of transcript does not preclude our ability to review the warrantless search, we consider the merits of

5

and, as the court had done in FECR340728, ultimately denied Abu Youm's motion to suppress, stating the community caretaker exception allowed for the warrantless entry and search of the apartment.

Abu Youm proceeded to trial for two counts of possession of a controlled substance with intent to deliver and two corresponding counts of failure to possess a tax stamp. At trial, he presented only one witness and that witness testified to the names of Abu Youm's siblings, presumably to explain that not all of the items found in the apartment bearing Abu Youm's last name were his. The jury found him guilty on all counts and specifically found that Abu Youm was in the immediate possession or control of a firearm during the commission of his crimes, triggering a weapon enhancement. *See* Iowa Code § 124.401(1)(e). After the verdict was entered, Abu Youm made motions for a new trial and in arrest of judgment, arguing the weight of the evidence was not such that the jury could properly find Abu Youm was in possession—either actual or constructive—of the controlled substances or a weapon. The district court denied both motions and sentenced Abu Youm to a total term of incarceration not to exceed twenty-five years.

**II. Analysis.**

Abu Youm appeals the denial of both his motion to suppress and his motion for a new trial. Because his motion to suppress was rooted in a violation of his constitutional rights, our review is de novo. *State v. Price-Williams*, 973 N.W.2d 556, 561 (Iowa 2022). We review a district court's denial of a motion for new trial for an abuse of discretion. *State v. Serrato*, 787 N.W.2d 462, 472 (Iowa 2010). A

---

Abu Youm's claim on appeal but do so without the benefit of a transcript of the earlier suppression hearing.

district court abuses its discretion when it is exercised on grounds clearly untenable or unreasonable. *State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008).

A. Motion to Suppress.

As a backdrop to this discussion, the district court concluded that the community caretaking exception applied to avoid the warrant requirement, relying upon the analysis of the other trial court in FECR340728 under the need for emergency medical aid prong. *See State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018) ("The community caretaking exception has three branches: '(1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the "public servant" exception.'" (citation omitted)). Abu Youm challenges the officers' entry into the apartment, arguing the officers only found evidence of an "emergency" after entering the apartment, which he claims is supported by their lack of haste getting to any potential injured person. We disagree and find that based upon the information available to the officers a reasonable person would find their actions appropriate. *See id.* at 251–53.

In reaching this result we consider that both our federal and Iowa constitutions protect persons from unlawful searches and seizures. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. While Iowa's supreme court "jealously guard[s] [the] right to construe a provision of our state constitution differently than its federal counterpart, though the two provisions may contain nearly identical language and have the same general scope, import, and purpose," "[w]e generally 'interpret the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment' because of their nearly identical language." *State v. Brown*, 930 N.W.2d 840, 847 (Iowa

2019) (citations omitted). Historically, our supreme court has "use[d] the federal substantive standard of community caretaking" while "reserv[ing] the right to apply that standard in a more stringent fashion than federal precedents." *State v. Kern*, 831 N.W.2d 149, 172 (Iowa 2013).

We pause to note that the United State Supreme Court recently clarified—and reined in the use of—the community caretaker exception in *Caniglia v. Strom*, 141 S. Ct. 1596, 1599–600 (2021). In that case, police officers were called to the petitioner's home by his wife for a welfare check because she could not get ahold of him after he expressed suicidal ideations involving his gun the night before. *Caniglia*, 141 S. Ct. at 1598. Officers arrived at the home with the wife and found the petitioner, who agreed with his wife's explanation of what happened but denied contemplating self-harm. *Id.* Officers called an ambulance and convinced the petitioner to go receive a psychiatric evaluation under the condition that the officers would not take his firearm. *Id.* But, after the petitioner left in the ambulance, officers entered the home and took two firearms. *Id.* Without considering if the actions were justified by exigent circumstances but by applying the community caretaker exception explained in *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), the First Circuit found the entry into the home and seizure of the firearms constitutional. *Caniglia v. Strom*, 953 F.3d 112, 124 (1st Cir. 2020). The Supreme Court reeled the exception developed by the First Circuit court back in, recognizing the vast difference in the expectation of privacy in a vehicle and a home and pointing to the distinction made by *Cady* between these two locations. *Caniglia*, 141 S. Ct. at 1599–600 (citing *Cady*, 413 U.S. at 441 ("Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim

of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.")).

But, while *Caniglia* reiterated that the community caretaking exception has a narrow scope that applies to vehicles in public places, it also recognized "that law enforcement officers may enter private property without a warrant when certain exigent circumstances exist, including the need to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." 141 S. Ct. at 1599 (cleaned up) (quoting *Kentucky v. King,* 563 U.S. 452, 460, 470 (2011)); *see also Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."); *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (citation omitted)). Because *Caniglia* recognizes that not all "unwelcome intrusions 'on private property'" are prohibited, we look to our case law for additional guidance. 141 S. Ct. at 1599 (citation omitted).

While applying federal precedent, Iowa case law has recognized the emergency aid exception, though under the umbrella of what we have previously described as the community caretaker exception. Both the state and federal regimes use the same test. *Compare Michigan v. Fisher*, 558 U.S. 45, 47 (2009) ("[The emergency aid exception] requires only 'an objectively reasonable basis for believing' that 'a person within [the house] is in need of immediate aid.'" (alteration

in original) (internal citations omitted)), *with State v. Carlson*, 548 N.W.2d 138, 141 (Iowa 1996) (requiring officers to have only an objectively reasonable belief that emergency aid or assistance is necessary). So, we continue by evaluating if the emergency aid exception applies to the search at hand.

Here, the details learned before the officers entered the apartment frame their choice to enter without obtaining a warrant. Video pulled from Sergeant Stroope's body camera shows the officers were told upon arrival at the apartment complex that gunshots came directly from Abu Youm's apartment and that a person was seen slumped over on the balcony. On the way to the unit, the officers observed gunshot damage to a vehicle nearby. The witness relayed a conversation he overheard that "it didn't have to go that far, I was just testing it." These facts taken together made it objectively reasonable for officers to be concerned for the well-being of those in Abu Youm's apartment. The officers explained repeatedly to the apartment's occupants that they were looking to make sure everyone was okay. *See Coffman*, 914 N.W.2d at 244–45 ("Under the emergency aid doctrine, the officer has an immediate, reasonable belief that a serious, dangerous event is occurring. . . . [A]n officer providing first aid to a person slumped over the steering wheel with a bleeding gash on his head acts pursuant to the emergency aid doctrine." (citation omitted)). And, once the officers knew there was no one injured in the apartment, they suspended their search until a warrant was acquired. *See Carlson*, 548 N.W.2d at 141 ("[T]he emergency-aid exception is justified because the motivation for the intrusion is to preserve life rather than to search for evidence to be used in a criminal investigation."). As the potential need for emergency aid was present before officers arrived at the

apartment door, it was reasonable for the officers to cross the threshold and complete an initial search without a warrant.[3] We affirm the district court's denial of Abu Youm's motion to suppress.

B. Motion for a New Trial.

Abu Youm argues the district court abused its discretion in denying his motion for a new trial because the jury's finding that he was in constructive possession of the controlled substances was contrary to the weight of the evidence.[4] When reviewing a weight-of-the-evidence claim, we do not reweigh the evidence ourselves; we simply determine whether the district court acted within its discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (citation omitted). "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or

---

[3] In moving for suppression, Abu Youm does not challenge the validity of the search warrant nor the scope of the search that was undertaken pursuant to the warrant.

[4] Abu Youm conflates the weight-of-the-evidence standard with the sufficiency-of-the-evidence standard. *See State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) ("[A] conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the appellate court into questions of credibility. The 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" (alteration in original) (quoting *Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982))). We recognize that, since *State v. Crawford*, 972 N.W.2d 189, 203 (Iowa 2022), a defendant can raise a sufficiency-of-the-evidence challenge without making the challenge to the district court first; but, as his appellate brief only indicates he is raising a weight-of-the-evidence challenge, we address only that.

an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Id.* (citation omitted). District courts use this power for only "extraordinary case[s]." *Id.*

"Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (citation omitted). A determination about constructive possession requires an examination of "the peculiar facts of each case." *State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002). "Constructive possession may be inferred when the drugs . . . are found on property in the defendant's exclusive possession." *Reed*, 875 N.W.2d at 705. If the individual does not have exclusive possession of the premises where the controverted item was found, certain factors must be considered to prove knowledge and control, including but not limited to:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* at 705–06 (citations omitted); *see also State v. Carter*, 696 N.W.2d 31, 39 (Iowa 2005) (noting these factors are only a guide). The defendant's proximity to the contraband is not enough to establish constructive possession, though it can be considered as a factor. *Id.* at 706.

We find no abuse of discretion in the district court's denial of the motion for a new trial. Abu Youm does not dispute—in his original motion nor now on appeal—the credibility of the evidence presented; he presented no alternative

evidence about his constructive possession of the drugs. *See Reeves*, 670 N.W.2d at 207 ("Moreover, there was no contrary evidence in the record. This is not one of those cases where the jury had to believe one of two people in arriving at a verdict."). Abu Youm only argues the evidence did not specifically tie him to the drugs. Yet, it is uncontroverted that drugs were found in a shared closet in Abu Youm's bedroom with other boxes containing identifiable items of Abu Youm and that Abu Youm denied his association with the apartment when it became clear it would be more thoroughly searched. Without another version of events to find more credible, it is not unreasonable for the district court to hold with the jury's conclusion rather than treat this as an extraordinary circumstance warranting a new trial. Finding no abuse of discretion, we affirm.

**III. Conclusion.**

Because the emergency aid exception allowed for the warrantless entry into Abu Youm's apartment and because the district court did not abuse its discretion in denying his motion for a new trial, we affirm.

**AFFIRMED.**