# IN THE COURT OF APPEALS OF IOWA

No. 24-1081
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL ALLEN ZANONI JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Bethany Currie,

Judge.


        A defendant appeals his drug-related convictions.  **AFFIRMED.**


        Denise M. Gonyea (argued) of McKelvie Law Office, Grinnell, for appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau (argued), Assistant

Attorney General, for appellee.


        Heard at oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**AHLERS, Presiding Judge.**

A jury found Michael Zanoni guilty of three crimes: (1) possession with intent to deliver over five grams of methamphetamine (enhanced as a second offense); (2) failure to affix drug tax stamp (enhanced as a habitual offender); and (3) possession of marijuana (enhanced as a third offense and habitual offender). He was sentenced accordingly, and he appeals.

Zanoni raises six issues. He argues: (1) his right to a speedy trial was violated because he was not brought to trial within one year of arraignment; (2) the district court erred by not enforcing a plea agreement he claims to have reached with the State; (3) the district court erred by denying his request to continue his trial; (4) the district court erred in denying his motion seeking to suppress evidence extracted from a cell phone; (5) the district court erred by denying his motion for new trial based on prosecutorial misconduct for failing to call a witness; and (6) the district court erred by denying his motion for new trial based on the claim that the verdict was against the weight of the evidence.

## I. Background

An Ames citizen became concerned that drugs were being sold in the parking lot of an apartment complex next to his home. The concerned citizen installed video cameras on his property to record the suspicious activity. He eventually called 911 to report seeing a man (later identified as Zanoni) meeting with others in the parking lot and "fiddling around" in the trunk of a car.

When police arrived in response to the 911 call, an officer drove past the parking lot and saw Zanoni with a black backpack accented with neon green or neon yellow. The officer made eye contact with Zanoni, but he didn't see anything

suspicious, so he started to drive away. Immediately thereafter, the officer received a call from dispatch saying the concerned citizen had called back and reported that Zanoni had taken off running in the opposite direction after seeing the officer. The officer circled back and spotted Zanoni twice, but the officer was unable to apprehend him. Both times the officer saw Zanoni, Zanoni did not have the backpack with him.

After searching unsuccessfully for Zanoni, the officer began looking for the backpack by retracing Zanoni's suspected escape route. The officer found a backpack abandoned behind a row of trees where other items had also been discarded. The backpack looked like it had not been sitting outside for long. The officer took the bag to the police station and searched it. Inside, he found syringes, a digital scale, marijuana, methamphetamine, two cell phones, and handwritten notes of phone numbers and dollar amounts. The officer testified that drug dealers frequently have two cell phones—one for personal use and the other for dealing. The officer also testified that the notes were consistent with the types of notes he sees in drug-dealing cases.

The backpack also contained items linking it to Zanoni. There was a financial institution receipt with Zanoni's name and account information on it and other paper containing his name. One of the cell phones found in the backpack was searched pursuant to a warrant. That search uncovered several "selfie" style photos of Zanoni. The phone also had several text messages in which the person sending the messages identifies himself as Zanoni. The user of the phone also logged into user accounts with usernames that included Zanoni's name, in whole

or in part. The phone also contained a photograph of Zanoni's state-issued identification card.

Based on this evidence, the State charged Zanoni with the aforementioned crimes. As previously noted, the jury found him guilty of all three crimes.

## II.      Discussion of the Issues

We address the six issues Zanoni raises in turn.

### A.      Speedy Trial

Generally, a defendant is required to be brought to trial with one year of arraignment. Iowa R. Crim. P. 2.33(2)(c). As Zanoni was not brought to trial within that period, he moved to dismiss the charges on that basis. But the district court correctly noted that there is an exception to the right to be brought to trial within one year when the defendant either (1) personally waives the right on the record or (2) personally waives the right in writing. *See* Iowa R. Crim. P. 2.33(2)(d). Here, Zanoni did both. As a result, the district court found that Zanoni took a "belt-and-suspenders approach" by waiving in both ways, even though either would have sufficed, and denied his motion.

On appeal, Zanoni challenges only his written waiver. The written waiver contains a recitation of Zanoni's rights, his affirmation of his understanding of them, and a waiver of them. It also contains the correct case number and signatures of Zanoni and his attorney. Nevertheless, Zanoni contends the written waiver was invalid because the top line of the caption of the document refers to Wright County rather than Story County. Because of this error, Zanoni contends that the Story County Clerk of Court should have rejected the filing under Iowa Rule of Electronic Procedure 16.308.

We need not address the merits of Zanoni's challenge to his written waiver. As noted, Iowa Rule of Criminal Procedure 2.33(2)(d) allows a defendant to waive the right to be brought to trial within one year of arraignment in either of two ways. Zanoni waived both ways—in an on-the-record hearing as well as in writing. As Zanoni does not challenge his on-the-record waiver, that waiver stands, so Zanoni's challenge based on a claimed violation of his right to be brought to trial within one year of arraignment fails.

## B.    Failure to Enforce Plea Agreement

The day before his trial, Zanoni filed a motion seeking to enforce a plea agreement he claimed to have reached with the State about ten months earlier in June 2023.[1] The claimed agreement called for the State to dismiss two charges and reduce the third, with Zanoni pleading guilty to the reduced charge. The district court denied Zanoni's motion. Zanoni challenges the denial on appeal.

"Plea [agreements] are akin to contracts." *State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020) (citation omitted). We review claims of breach of contract for correction of errors at law. *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023).

Zanoni's claim that a plea agreement was reached is supported by a letter from an assistant county attorney to Zanoni's then-defense counsel confirming that an agreement was reached and the terms of the agreement. But even if that letter

---

[1] At oral argument, counsel for Zanoni attempted to discuss a prior guilty plea that Zanoni ultimately withdrew after the district court granted his motion in arrest of judgment in January 2023. Because Zanoni's appellate briefing only addresses a purported agreement from June 2023, we limit our analysis to consideration of that purported agreement only.

establishes that an agreement had been reached, the State was permitted to withdraw from the agreement "at any time prior to, but not after, actual entry of the guilty plea by defendant or other action by defendant constituting detrimental reliance upon the arrangement." *State v. Edwards*, 279 N.W.2d 9, 11 (Iowa 1979).

Zanoni never entered a guilty plea, nor does he point to any event that shows that he detrimentally relied on an agreement. During the final pretrial conference, the district court asked Zanoni's attorney directly, "[W]hat evidence do you have that your client relied on the agreement and has not withdrawn from it?" His counsel acknowledged, "I have nothing to show the court." This exchange plus the surrounding circumstances caused the district court to deny the motion, stating, "You've asked to redepose witnesses. You've refiled motions to dismiss. Clearly, there was no intention whatsoever of taking this plea agreement until maybe 1:17 today when the motion was filed. The motion is denied."

The court's finding is supported by substantial evidence, and the court's conclusion contains no legal error. Zanoni's actions were consistent with those of a defendant with no plea agreement. He never advised the court of an agreement. He never asked to set a plea hearing. About a month and one-half after the date of the letter, he participated in a hearing at which he waived his right to be brought to trial within one year of arraignment—a waiver that would be unnecessary if Zanoni intended to plead guilty pursuant to the claimed plea agreement. Nine different trial dates were scheduled after the date of the letter, yet Zanoni never informed the court that a trial date was unnecessary because he intended to plead guilty. Additionally, Zanoni moved to dismiss the charges—another action inconsistent with having a plea agreement. He also asked to redepose witnesses.

Under these circumstances, it is clear that both the State and Zanoni operated with the understanding that there was no plea agreement. Zanoni's challenge on this ground fails.

### C. Denial of Continuance Request

The day before his trial, Zanoni filed a motion seeking to continue it. The district court denied the motion. Zanoni challenges the denial on appeal. We review for an abuse of discretion, and we will not disturb the ruling unless an injustice has resulted. *State v. Artzer*, 609 N.W.2d 526, 529–30 (Iowa 2000).

To assess Zanoni's claim, we start with some procedural history. The trial date Zanoni sought to continue was the fourteenth trial date set in his case. Zanoni had previously filed a motion to continue the thirteenth trial date, which was scheduled to take place just one week earlier. At the hearing on that motion, Zanoni testified that he and his attorney would be better prepared if he could be given a week's continuance. The court granted Zanoni's request and continued the case one week to the fourteenth trial date, which Zanoni unsuccessfully tried to continue.[2] In denying the request to continue the last trial date, the court gave the following rationale to defense counsel:

> Well, last week, when you called Mr. Zanoni to testify at the hearing on the motion to continue, he said that a week—to start tomorrow would be fine. So I'm taking his word on that. He has had sufficient time. He's had twenty months or so. And [a previous defense attorney] had previously done depositions a year ago, so clearly

---

[2] Part of the reason the trial was continued only one week was that Zanoni had another felony case pending in Story County. In both that case and this case, Zanoni had redemanded his right to a speedy trial, and that ninety-day speedy-trial deadline was approaching. Due to defense counsel's schedule and the need to have different jury panels for Zanoni's two cases, there was difficulty scheduling both cases for trial within the speedy-trial deadline if this case did not proceed to trial when it did.

previous attorneys did do work on the case. It's not as though it was sitting completely stale with no motion whatsoever. The motion to continue is denied.

As the district court observed during the hearing, Zanoni appeared to be undertaking a strategy to delay the trial. The record supports this observation. At some point, the case needed to be tried, and we find no abuse of the district court's discretion in making that happen when it did by denying Zanoni's latest request for a continuance.

### D.     Motion to Suppress

Next, Zanoni argues the district court erred when it denied his motion to suppress evidence extracted from the cell phone found in the abandoned backpack. The motion was made orally on the third day of trial. The basis for the motion was that the original search warrant application and warrant were not retained—they only existed in electronic form in the court filing system. Zanoni claims Iowa Rule of Electronic Procedure 16.411(1) required the filer of the search warrant application and warrant to retain the original for inspection and, because that was not done, the warrant was invalid. The district court denied the motion as untimely and because rule 16.411(1) does not apply to search warrant applications or warrants. We agree with both bases for denying the motion.

As to determinations of timeliness of a motion to suppress, we review for abuse of discretion. *State v. Ortiz*, 766 N.W.2d 244, 249 (Iowa 2009). Motions to suppress illegally obtained evidence must be filed no later than forty days after arraignment. Iowa R. Crim. P. 2.11(4)(c), (6).[3] Failure to meet that deadline

---

[3] The Iowa Rules of Criminal Procedure underwent several revisions while this case was pending in the district court. All references made to those rules are to

"waives the objection that the evidence was unlawfully obtained unless good cause is shown for a later filing." Iowa R. Crim. P. 2.12(3). There is no question the motion was untimely, as it was made 549 days after arraignment. We find no abuse of discretion in the district court's decision to deny Zanoni's motion as untimely.

Although the untimely nature of Zanoni's motion is a sufficient basis for rejecting Zanoni's challenge, we also address the merits. We review a district court ruling interpreting the rules of electronic procedure for correction of errors at law. *State v. Mendoza*, 999 N.W.2d 311, 313 (Iowa Ct. App. 2023).

As noted, Zanoni's challenge is based on his contention that rule 16.411(1) required the retention of the original search warrant application and warrant. This calls on us to interpret rule 16.411(1). In interpreting court rules, we apply the same principles that we use for interpreting statutes. *In re N.F.*, 17 N.W.3d 667, 674 (Iowa 2025). One of those principles is that when the text is plain and its meaning is clear, we do not search for meaning beyond the express terms of the rule. *See Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 50 (Iowa 2024). If the text is "clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute." *State v. Tague*, 676 N.W.2d 197, 202 (Iowa 2004).

---

the newest revisions because both parties cite to the newest version, neither argues the revision changed the relevant substantive law, and our supreme court has ordered retroactive application of the newest rules to cases pending at the time of their adoption. Iowa Supreme Ct. Order, *In the Matter of Adopting Amendments to the Revised Chapter 2 Iowa Rules of Criminal Procedure* ¶ 2 (May 31, 2023).

Here, the rule provides: "*When the law requires the filing of an original document*, such as a will, codicil, mortgage document, note payable, birth certificate, foreign judgment, or other certified or verified document, the filer must scan the original document and electronically file the scanned document." Iowa R. Elec. P. 16.411(1)(a) (emphasis added). In that instance, the filer must retain the original for at least two years or until the conclusion of the case, appeal, estate, or as otherwise required by law. Iowa R. Elec. P. 16.411(1)(b).

The clear and unambiguous text of the rule reveals that it applies only when the law requires the filing of an original document. Iowa R. Elec. P. 16.411(1)(a). The rule provides some examples of documents for which the law requires an original to be filed. In contrast to the examples listed in the rule, Zanoni points to no law requiring the filing of an original search warrant application or warrant, and we have found none in our own search. *Compare* Iowa Code §§ 633.301, .302 (2022) (requiring the clerk to file and maintain an original will), *and* Iowa R. Civ. P. 1.961 (requiring filing of a promissory note for cancellation before judgment can be entered), *with* Iowa Code §§ 808.3, .4, .5, .8, .11 (imposing no requirement that an original search warrant application or warrant be filed or maintained). In fact, some rules and statutes suggest that it is permissible, if not preferable, for search warrant applications to be submitted and search warrants to be issued electronically. For example, Iowa Rule of Electronic Procedure 16.702 permits a search warrant application to be presented to a judicial officer "in paper form if the applicant or the court does not have immediate access to technology necessary to electronically present the application to the court"—suggesting electronic presentation is the norm and presentation of a paper application the

exception. Similarly, Iowa Code section 808.3(1)(b) permits submission of a search warrant application to a judicial officer "in person or by electronic submission," and section 808.4 permits the warrant to be issued electronically.

Given these authorities permitting electronic handling of search warrant applications and warrants—coupled with Zanoni's failure to cite any authority to the contrary—we conclude that search warrant applications and warrants are not documents for which the law requires the filing of an original. As such, like the district court, we conclude that rule 16.411(1) does not apply to search warrant applications or search warrants. The district court correctly denied Zanoni's motion to suppress the evidence extracted from the cell phone.

### E. Prosecutorial Misconduct

Zanoni's next contention is that the court erred in denying his post-trial motion for a new trial based on prosecutorial misconduct. His argument stems from the fact that the State initially listed Ames police officer John Barney as a witness in the minutes of testimony. Later, the State informed defense counsel that it did not intend to call Officer Barney as a witness and removed the officer from the witnesses listed in the minutes. Zanoni claims the prosecutor's failure to call Officer Barney as a witness was misconduct, amounting to a violation of his due process rights and warranting a new trial, because he claims Officer Barney had information favorable to Zanoni's defense. He also claims the State's removal of Officer Barney from the minutes of testimony was misconduct because it was

intended to deny him the right to depose that witness under Iowa Rule of Criminal Procedure 2.13(1). We disagree on both claims.[4]

We review a court's ruling related to prosecutorial misconduct for abuse of discretion and only reverse if such discretion was based on "grounds clearly untenable or to an extent clearly unreasonable." *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018) (citation omitted). A new trial based on prosecutorial misconduct resulting in a due process violation will only be granted if the defendant proves prosecutorial misconduct occurred and that the "misconduct resulted in prejudice that denied the defendant a fair trial." *Id.* at 138.

Prosecutors have a duty to comply with the requirements of due process to ensure the defendant receives a fair trial. *See id.* at 139. But Zanoni cites no persuasive authority for his claim that the prosecutor had the obligation to call a witness listed in the minutes. In fact, our case law establishes that prosecutors have no duty to call a witness listed in the minutes of testimony if they later determine the witness's testimony is unnecessary. *State v. Shipley*, 757 N.W.2d 228, 232 (Iowa 2008) (finding no such duty in Iowa Rule of Criminal

---

[4] Zanoni's brief makes passing reference to an additional argument—that the court erred when it did not allow him to depose Officer Barney regardless of whether the officer had been removed from the list of witnesses in the minutes of testimony. If Zanoni is attempting to make this a separate issue, we find the issue forfeited. The section heading in Zanoni's brief asserts that the court erred by denying his motion for new trial based on prosecutorial misconduct for failing to call Officer Barney as a witness. Neither the section heading nor the argument that followed developed any independent argument about a standalone right to depose Officer Barney. So, if Zanoni is attempting to raise a standalone issue to that effect, we find the issue forfeited due to Zanoni's failure to adequately identify it, develop it, or cite relevant authority in support of it. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (stating a party forfeits an issue when a party fails to clearly identify an issue, make more than a perfunctory argument in support of an issue, or cite any authority in support of the issue).

Procedure 2.5(3)); *State v. Castillo*, 315 N.W.2d 63, 65 (Iowa 1982) (holding that now rule 2.5(3) "does not require the State to call every witness whose name is endorsed" on the trial information and minutes). And we see no misconduct in removing a witness from the witness list when the State no longer intends to call the witness, even if that may have had the practical effect of preventing Zanoni from deposing the witness under rule 2.13(1).

Zanoni's arguments ignore two important tools in his toolbox. First, if Zanoni believed Officer Barney had information favorable to the defense, Zanoni could have compelled him to testify via subpoena. *See State v. Russell*, 897 N.W.2d 717, 731 (Iowa 2017) (recognizing state and federal constitutional rights to compel testimony). Second, even though Zanoni no longer had the right to depose Officer Barney under rule 2.13(1) once he was removed from the State's witness list in the minutes, he still had the option of requesting the court to order Officer Barney to be deposed under rule 2.13(6)(a). Regardless of whether that request was granted, it does not change the fact that Zanoni could have subpoenaed the officer to testify about the information Zanoni contends was favorable to him. The State did not have the obligation to call the witness for Zanoni. The district court reached the same conclusion, and we find no abuse of discretion in its decision to deny Zanoni's motion for new trial accordingly.

### F. Weight of Evidence

Zanoni's final contention is that the district court abused its discretion by denying his motion for a new trial based on his claim that the verdict is contrary to

the weight of the evidence.[5]  A court may grant a new trial "[w]hen the verdict is contrary to law or contrary to the weight of the evidence."  Iowa R. Crim. P. 2.24(2)(b)(7).  Zanoni claims the weight of the evidence preponderates against a finding that he possessed the backpack containing the drugs.

A district court may grant a motion for a new trial only in exceptional circumstances where the evidence preponderates heavily against the verdict. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).  The district court has broad discretion when ruling on motions for new trial based on the weight of the evidence. *Id.*  We will only overturn its decision when it abuses its discretion by basing its decision on "grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *Id.*  Our task is not to review the underlying question by making our own credibility determinations or reweighing evidence.  *Id.* at 203.  Instead, we analyze the evidence to determine whether the district court abused its discretion when it found that the evidence did or did not preponderate against the verdict.  *Id.* In doing so, we rely on the credibility and evidentiary inferences made by the district court.  *Id.* at 209.

All three of the crimes of which Zanoni was found guilty required proof that he possessed the backpack containing the contraband.  To prove possession the

---

[5] The issue heading raising this issue in Zanoni's brief refers to claimed error in denying his motion in arrest of judgment based on the weight of the evidence. However, the body of the argument in this section focuses on the denial of his motion for new trial, as it should.  *See McGhee v. State*, No. 22-0075, 2023 WL 3862172, at *3 (Iowa Ct. App. June 7, 2023) (finding a motion in arrest of judgment to be an improper vehicle for claiming a verdict is contrary to the weight of the evidence).  As the substance of the argument focuses on the denial of his new-trial motion—and not his motion in arrest of judgment—we limit our analysis accordingly.

State must show the defendant "exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was a narcotic." *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008). Actual possession can be shown by evidence that contraband was on an individual's person at some point. *State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021).

Zanoni contends the verdict was against the greater weight of the evidence due to lack of proof that he possessed the backpack, and the court abused its discretion in finding otherwise. So we turn to the evidence. Two individuals witnessed Zanoni with a black backpack accented with neon green or yellow. When an officer drove by in response to a 911 call reporting suspicious activity, Zanoni fled in the opposite direction with the backpack. The officer pursued Zanoni and saw him two times without a backpack. Unable to apprehend Zanoni and suspecting he had discarded the backpack, the officer traced Zanoni's suspected escape route. The officer found a backpack matching the description of the one in Zanoni's possession. A search of the backpack revealed evidence of Zanoni's possession of it, including a bank receipt with Zanoni's name and account information; a phone containing several selfies of Zanoni; a picture of his state-issued ID; several text messages where the sender identified himself as Zanoni; and several apps with account names containing Zanoni's name either in whole or in part.

This evidence supports the jury's finding that Zanoni possessed the backpack, his knowledge of the contraband within, and his knowledge that the contents were narcotics. *See Jones*, 967 N.W.2d at 343 (finding actual possession

when a defendant looked back at a bag of drugs on the ground where he had been standing and attempted to shepherd police away from the area); *State v. Keys*, No. 11-2089, 2013 WL 1457044, at *2 (Iowa Ct. App. Apr. 10, 2013) (finding actual possession when an officer witnessed a defendant stop midflight and later found drugs in the same spot the defendant stopped). Given the plethora of evidence linking Zanoni to the backpack containing drugs and evidence of his intent to distribute them, the district court did not abuse its discretion when it determined the weight of the evidence did not preponderate against the verdict and thus denied the motion for a new trial.

III.    **Conclusion**

Finding no merit in any of Zanoni's six challenges, we affirm.

**AFFIRMED.**